**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-1495**

_____

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY
ASSOCIATION, INC.,

               Plaintiff - Appellant,

     v.

DANN OCEAN TOWING, INC., in personam; THE TUG CAPTAIN DANN,
in rem; DANN TOWING COMPANY,

               Defendants - Appellees.

_____

Appeal from the United States District Court for the District of
Maryland, at Baltimore. Catherine C. Blake, District Judge.
(1:08-cv-02195-CCB)

_____

Argued: May 13, 2014            Decided: June 26, 2014

_____

Before WILKINSON, KEENAN, and DIAZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Keenan wrote the opinion,
in which Judge Wilkinson and Judge Diaz joined.

_____

**ARGUED**: David H. Fromm, BROWN GAVALAS & FROMM LLP, New York, New
York, for Appellant. Allen K. von Spiegelfeld, BANKER LOPEZ
GASSLER, PA, Tampa, Florida, for Appellees. **ON BRIEF**: Patrick
R. O'Mea, BROWN GAVALAS & FROMM LLP, New York, New York, for
Appellant. James W. Bartlett, III, Alexander M. Giles, SEMMES,
BOWEN & SEMMES, Baltimore, Maryland, for Appellees.

_____

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider whether the district court erred in concluding that a choice-of-law provision in a maritime insurance contract required use of New York's six-year statute of limitations, rather than the equitable doctrine of laches ordinarily applied under maritime law, to determine the timeliness of certain claims brought under the insurance contract. Upon our review, we hold that the district court properly determined that the choice-of-law provision in the parties' contract required application of New York's statute of limitations to the claims at issue. Therefore, we affirm the district court's judgment.

I.

The American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the Club) is a non-profit provider of protection and indemnity insurance, which insurance covers vessel owners and charterers against third-party liabilities arising from the ownership and operation of insured vessels. Members of the Club pay insurance premiums and assessments, which the Club uses to reimburse members for covered losses. The Club issues to each of its members a Certificate of Entry, which reflects that the member has entered into a marine

2

insurance contract with the Club subject to the Club's By-Laws and Rules (Rules).

The Club's Rules include a choice-of-law provision selecting New York law and a two-year statute of limitations for claims against the Club, in addition to requirements for exhausting insurance disputes and selecting a forum for litigation. The relevant section of the Rules reads as follows:

> If any difference or dispute shall arise between a Member and the [Club] concerning the construction of these Rules, or the insurance afforded by the [Club] under these Rules, or any amount due from the [Club] to the Member, such difference or dispute shall in the first instance be referred to and adjudicated by the Board of Directors. No Member shall be entitled to maintain any action, suit or other legal proceedings against the [Club] upon any such difference or dispute unless and until the same has been submitted to the Directors and they shall have given their decision thereto, or shall have been in default for three months in so doing. These Rules and any contract of insurance between the [Club] and a Member shall be governed by and construed in accordance with the law of the State of New York. In no event shall suit on any claim be maintainable against the [Club] unless commenced within two years after the loss, damage or expense resulting from liabilities, risks, events, occurrences and expenditures specified under this Rule shall have been paid by the Member. Any such suit against the [Club] shall be brought in the United States District Court for the Southern District of New York. (Emphasis added.)

Dann Ocean Towing, Inc. (Dann) was a member of the Club between 1995 and 2001. Dann obtained insurance through the Club for a tugboat, which damaged a barge when the tugboat ran

3

aground on a coral reef in 1998. The barge's owner asserted a claim against Dann for property damage, and the United States asserted a claim against Dann for environmental damage to the reef. Dann settled both parties' claims in November 2001 for a total amount of $2,170,000.

The Club originally agreed to contribute $1,170,000 toward the settlement. However, one of the underwriters for Dann's liability insurance became insolvent and could not pay its portion of the settlement, in the amount of $278,552.55 (the shortfall). Although both Dann and the Club denied responsibility for the shortfall, the Club paid the shortfall to preserve a settlement offer that it considered "extremely favorable," but indicated that the Club would seek reimbursement from Dann.

Dann refused to reimburse the Club for the shortfall. In response, the Club declined to reimburse Dann for certain insurance claims that otherwise would have been payable to Dann, and withheld a total amount of $131,085.43 in covered losses that the Club later used to offset the shortfall. Thereafter, Dann refused to pay its insurance premiums to the Club for the policy years 1999, 2000, and 2001. The total amount of Dann's unpaid premiums was $452,610.23.

In August 2008, the Club filed a civil action against Dann and the tugboat, alleging that Dann breached the insurance

4

contract by failing to reimburse the Club for the shortfall and by failing to pay the overdue insurance premiums. Dann filed a counterclaim against the Club, alleging that the Club breached the insurance contract by failing to indemnify Dann for covered losses. The Club and Dann each alleged that the respective claims against them were time-barred, posted $500,000 bonds as security and counter-security for the various claims,[1] and filed cross-motions for summary judgment.

In August 2010, the district court initially ruled that the equitable doctrine of laches, rather than New York's six-year statute of limitations for contract claims, governed the timeliness of the Club's claims against Dann. The court found that all the Club's claims, except one involving an unpaid insurance premium in the amount of $76,925.56, accrued more than six years before the Club filed suit. In its laches analysis, the court concluded that the Club's claim relating to the shortfall was not barred because the Club's delay in filing suit was reasonable, in that the Club made various out-of-court attempts to obtain reimbursement from Dann and the delay did not prejudice Dann.

---

[1] Dann posted a $500,000 vessel release bond as security for the claims against the tugboat, and the Club posted a $500,000 bond as counter-security for Dann's claims.

In May 2012, however, upon further briefing by the parties, the district court reconsidered its ruling. The court observed that although there is a "typical presumption that courts sitting in admiralty jurisdiction apply the equitable doctrine of laches rather than a specific statute of limitations," the choice-of-law clause in the parties' contract "compels the application of the elected jurisdiction's statute of limitations." Accordingly, the district court held that "claims arising from the maritime insurance contract between [Dann] and the Club are subject to New York's six-year statute of limitations," which barred all the Club's claims except for the one concerning the $76,925.56 premium.

Because the parties' contract expressly provided that claims brought against the Club were subject to an even shorter two-year limitation, the court ruled that Dann's indemnity claims against the Club were time-barred under the parties' contract, but that those claims could be employed defensively under the doctrine of recoupment to offset the entirety of the Club's surviving claim for the $76,925.56 unpaid insurance premium. Thus, although the court granted summary judgment to the Club on its surviving unpaid insurance claim and dismissed the parties' other claims, the court ultimately held that "neither party can recover against the other," granted Dann's motion to reduce the amount of its bond from $500,000 to

6

$100,000, and directed that the case be closed. The Club timely appealed.

## II.

We consider on appeal whether the district court erred in concluding that the timeliness of the Club's contract claims against Dann is governed by New York's six-year statute of limitations for contract actions, based on the parties' agreement that the insurance contract "shall be governed by and construed in accordance with the law of the State of New York." The Club contends that because this case arises under admiralty jurisdiction, the district court was required to apply the doctrine of laches as the procedural law of the maritime forum, rather than New York's statute of limitations. We disagree with the Club's argument.

Laches is an equitable doctrine that can be raised by a defendant as an affirmative defense to a claim, and requires that the defendant show "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." Giddens v. Isbrandtsen Co., 355 F.2d 125, 127 (4th Cir. 1966) (citation and internal quotation marks omitted). In assessing the timeliness of a maritime claim, the doctrine of laches typically applies rather than any fixed statute of limitations. See id. at 126-27. However,

7

there are many examples of exceptions to this general rule, such as statutory provisions that impose time bars on personal injury actions arising out of maritime torts, see 46 U.S.C. § 30106, on certain cargo loss contract claims under the Carriage of Goods by Sea Act, see 49 Stat. 1207, 1209 (1936) (codified at 46 U.S.C. § 30701 note), and on maritime salvage actions, see 46 U.S.C. § 80107(c).

In this case, the district court ultimately agreed with Dann that parties to a maritime insurance contract may elect to avoid the doctrine of laches by including in their contract an enforceable choice-of-law provision that requires application of another jurisdiction's law and, implicitly, that jurisdiction's statute of limitations. The court based its analysis on two cases, namely, Cooper v. Meridian Yachts, Ltd., 575 F.3d 1151 (11th Cir. 2009), and Italia Marittima, S.P.A. v. Seaside Transportation Services, LLC, 2010 WL 3504834 (N.D. Cal. Sept. 7, 2010) (unpublished).

In Cooper, the Eleventh Circuit considered a claim for indemnification and contribution brought by a ship owner against a ship builder for injuries sustained by a worker on the ship. The parties' contract provided that "all disputes arising out of or in connection with [the contract] . . . shall be construed in accordance with and shall be governed by the Dutch law." 575 F.3d at 1162. The court held that this provision was "clearly

meant to be read broadly" and that the parties' choice of Dutch law governed not only the timeliness of pure contract claims, but also the timeliness of the indemnification and contribution action for related tort claims. Id.

Similarly, in Italia Marittima, a district court considered claims for negligence and breach of contract arising from the performance of stevedoring services aboard a vessel that sustained a loss of cargo during inclement weather. 2010 WL 3504834, at *1-3. The court held that California's statutes of limitations applied to both the breach of contract claims and the negligence claims based on a choice-of-law provision in the parties' contract stating that the contract "shall be construed, interpreted and enforced in accordance with the laws of the State of California without reference to the laws of any other jurisdiction, except to the extent that the laws, rules and regulations of the United States of America shall apply." Id. at *8. Because the choice-of-law clause clearly "promote[d] California law," and because laches is a common law doctrine rather than codified federal law, the court reasoned that the contract required application of California's statutes of limitations. Id.

We do not discern any contrary authority preventing a federal court sitting in admiralty from enforcing a valid choice-of-law provision in a maritime contract incorporating a

9

statute of limitations, in place of the traditional doctrine of laches. Accordingly, we agree with the district court, and with the reasoning of the decisions in Cooper and Italia Marittima, that an otherwise valid choice-of-law provision in a maritime contract is enforceable and may require application of a jurisdiction's statute of limitations, in lieu of the doctrine of laches, to govern issues regarding the timeliness of claims asserted under that agreement.

We find no merit in the Club's alternative argument that the decisions in Cooper and Italia Marittima are distinguishable because, in contrast to the provision before us, the choice-of-law clauses interpreted in those cases were sufficiently detailed to incorporate the "procedural" rules in addition to the "substantive" rules of the chosen jurisdictions. Even assuming that New York's statute of limitations constitutes a "procedural" rule of law in this context, the Club's argument is unpersuasive because, under New York law, we must accord unambiguous provisions of an insurance contract their plain and ordinary meaning. See, e.g., White v. Cont'l Cas. Co., 878 N.E.2d 1019, 1021 (N.Y. 2007). The plain language of the contract before us unambiguously provides that the contract shall be "governed by" New York law. This phrase clearly signals the parties' intent that, subject to any exceptions stated in the contract, New York law will be applied as

10

"governing" the timeliness of claims asserted under the contract. Because the claims at issue in this case are contractual in nature and are not subject to the stated exception for claims brought against the Club, the parties' choice-of-law clause amply encompasses the present claims. Thus, the plain language of the parties' contract fails to contain any indication that the parties intended to preserve application of the doctrine of laches for any claims brought under the contract.

Additionally, even if we were to assume, without deciding, that the choice-of-law provision is ambiguous regarding the parties' intent to incorporate New York's statute of limitations for contract actions, we would, under basic principles of contract interpretation, resolve any such ambiguity against the insurer and in favor of the insured party. See id. (stating that if the terms in an insurance contract are ambiguous, any ambiguity must be construed in favor of the insured and against the insurer); see also McCarthy v. Am. Int'l Grp., Inc., 283 F.3d 121, 124 (2d Cir. 2002) (observing that under New York law, courts construe ambiguities in insurance contracts against the drafter). Here, it is undisputed that the Club, as insurer, supplied Dann with the contract of insurance and drafted the Rules governing the parties' insurance contract. Therefore, we construe any ambiguity regarding the intended breadth of the

11

choice-of-law provision against the Club and in favor of applying New York's statute of limitations to the Club's claims against Dann.

## III.

Accordingly, we hold that the district court correctly applied New York's six-year statute of limitations to the Club's claims arising under its maritime insurance contract with Dann. We therefore affirm the district court's judgment.[2]

AFFIRMED

---

[2] In affirming the district court's judgment, we also affirm the court's decision granting Dann's motion to reduce the amount of its bond. Although Dann requested in its brief that we discharge the bonds posted by both parties, we do not address this issue because Dann did not seek a full discharge of the bonds from the district court in the first instance, and did not appeal the district court's order. Therefore, Dann's request for relief is not properly before us on appeal.