## GALAPAGOS CORPORACION TURISTICA "GALATOURS", S.A.

v.

## THE PANAMA CANAL COMMISSION

No. 00–3190.

United States District Court, E.D. Louisiana.

March 8, 2002.

Christopher Ogilvie Davis, William Joseph Riviere, Robin C. Minturn, Phelps, Dunbar, LLP, New Orleans, LA, for Plaintiff.

David L. Terzian, Linda S. Renzi, Tami C. Parker, Ann K. Donohue, U.S. Dept. of Justice Torts Branch, Civil Div., Washington, DC, for Defendant.

## ORDER AND REASONS

BARBIER, District Judge.

Before the Court is the **Motion for Partial Summary Judgment** (Rec.Doc. 43),

filed by third-party defendant, Smit International Harbour (Panama), Inc. and joined by defendant/third-party plaintiff Panama Canal Commission. Plaintiff opposes the motion. The motion, set for hearing on Wednesday, January 30, 2002, is before the Court on briefs without oral argument. Having considered the record, the memoranda of the parties, and applicable law, the Court finds that the motion should be **GRANTED** for the reasons that follow.

## FACTUAL BACKGROUND

This case arises out of the total loss of the GALAPAGOS DISCOVERY ("DISCOVERY"), an Ecuadorian vessel owned and operated by plaintiff Galapagos Corporacion Turistica ("Galatours"), an Ecuadorian company.[1] Smit's Statement of Uncontested Material Facts ¶ 3 (Rec.Doc. 43) (hereinafter "Uncontested Facts"); Galatours's Resp. to Uncontested Facts at 2, 4 (Rec.Doc. 54)(hereinafter "Resp. to Uncontested Facts"). On October 19, 1999, while the DISCOVERY was docked at a pier in Panama awaiting completion of its engine repairs, a fire broke out in the engine room area of the vessel. Uncontested Facts ¶¶ 1–2. Defendant Panama Canal Commission ("PCC"), a U.S. agency, responded shortly after receiving notice to the fire with its fire-fighting units. Galatours's Mem. in Opp'n at 2 (Rec.Doc. 54)(hereinafter "Opp'n"); Compl. ¶ I (Rec.Doc. 1). However, the fire ultimately

destroyed the entire ship, and it was declared a total loss. Uncontested Facts ¶ 3.

On October 27, 2000, Galatours brought suit against PCC in this Court pursuant to 22 U.S.C. § 3771, *et seq.*, which allows a party to seek damages for injuries caused by the United States in the Panama Canal. Compl. ¶ 1. Galatours neither alleges any causes of action nor does it seek damages under Panama law. *Id.* ¶¶ I–XII. Rather, it seeks damages under 22 U.S.C. § 3773.[2] More specifically, Galatours alleges that PCC's fire-fighting units' negligence in fighting the fire resulted in the total loss of the vessel. Compl. ¶ VI.

In turn, PCC filed a third-party complaint against Smit International Harbour Towage (Panama) Inc. ("Smit"), with whom PCC had contracted to provide fire-fighting tugs in the Panama Canal. PCC's Answer, Defenses, Countercl. and Third–Party Compls. at 13 (Rec.Doc. 4)(hereinafter "Third–Party Compls."). When the DISCOVERY caught fire, PCC called Smit to respond with its tugs to the fire. Opp'n at 2. In its third-party claim against Smit, PCC seeks indemnification, reimbursement, and/or contribution from Smit for its role in the loss of the vessel. Third–Party Compls. at 15.

In the instant motion, Smit seeks partial summary judgment striking Galatours' claims for loss of use and other consequential damages, arguing that these damages are not available under federal maritime

---

1. Galatours protests that the DISCOVERY was a "constructive total loss" as opposed to just a "total loss." Galatours's Mem. in Opposition at 2 (Rec.Doc. 54). However, Galatours itself refers to the loss of the DISCOVERY as a "total loss"—not a "constructive total loss"—in its Complaint. Compl. ¶ VI (Rec.Doc. 1). Moreover, whether the loss was constructive or not is irrelevant. The Fifth Circuit has held either term works the same result; they are used interchangeably with the exception that a "constructive total loss" technically occurs when the cost of re-

pairing vessel "exceeds the fair market value of the vessel immediately before the casualty." *Gaines Towing & Transp., Inc. v. Atlantia Tanker Corp.*, 191 F.3d 633, 636 (5th Cir. 1999). In any event, the DISCOVERY, which sank and was never recovered, is fairly characterized as a total loss.

2. This section allows for damages in actions brought under the Panama Canal Act, which includes § 3771 and § 3776, the sections under which Galatours basis its claim.

law. Galatours opposes the motion arguing that Panamanian law, rather than federal law, applies to the issue of damages in this case, and that the law of Panama allows consequential damages in this case.

## ARGUMENTS OF THE PARTIES

The parties present this Court with a choice of law question: does the federal maritime law of the United States or Panamanian law apply with respect to damages in this matter? Smit claims that because Galatours brought suit against PCC under a U.S. statute, the law of the United States controls with respect to the issue of damages, and thus Galatours can neither seek consequential damages nor recovery for loss of use because federal maritime law precludes such damages. *See, e.g., King Fisher Marine Serv. v. NP Sunbonnet*, 724 F.2d 1181 (5th Cir.1984).

■ PCC has joined in the motion, concurring in Smit's arguments. Additionally, PCC argues that the *Lauritzen/Rhoditis* factors, set forth by the Supreme Court as guidance in determining what law to apply in maritime tort actions, weigh in favor of applying United States law. *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970). Under this precedent, the eight factors a court should consider when determining what law to apply in a maritime tort case are:

1) the place of the wrongful act

2) the law of the flag

3) the allegiance or domicile of the injured party

4) the allegiance of the defendant shipowner

5) the place of contract

6) the inaccessibility of the foreign forum

7) the law of the forum

8) the shipowner's base of operations (the factor gleaned from *Rhoditis*, 398 U.S. at 309, 90 S.Ct. at 1734).

*Lauritzen*, 345 U.S. at 583–91, 73 S.Ct. at 928–33. PCC concludes that federal maritime law applies in light of the factors because all claims were brought in a U.S. court, damages were paid out of tolls collected by the U.S. (not a *Lauritzen* factor), and Panama has no competing interest in this matter.

Finally, PCC argues that Galatours chose to sue PCC under 22 U.S.C. § 3772, a statute under which the federal government waived its sovereign immunity. When that statute was enacted as part of the Panama Canal Act, Panama had not yet developed its own law on damages in this type of action. Accordingly, PCC reasons that it is unlikely that the federal government intended to waive its sovereign immunity to be sued under a body of law that had not yet been promulgated.

Galatours does not take issue with PCC and Smit's characterization of the differences between Panamanian law (which allows consequential damages, etc. in cases of total loss) and federal maritime law (which does not); nor does Galatours take issue with the proposition that federal maritime law applies to the liability issues in this case. However, Galatours argues that the law of Panama applies to damages in this suit and thus that it is entitled to seek consequential damages and damages for loss of use.

In making this contention, Galatours' argument is essentially two-fold. First, it suggests that the doctrine of depecage allows this Court to bifurcate the issue of liability and damages and apply the law of Panama to the damages issue with respect to the PCC even though federal maritime law determines PCC's liability. Galatours explains that "[u]nder the doctrine of depecage, the Court may separate choice of

law determinations not only as to separate parties within the same case but separate claims as well." Opp'n at 5–6 (citing *In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147 (5th Cir.1987)).

Second, Galatours' analysis of the *Lauritzen/Rhoditis* factors suggests that Panamanian law should apply. In analyzing the factors, Galatours places Smit in the shoes of the defendant and argues in favor of applying Panama law based on four of the factors: the location of the wrongful act (Panama); the place of the contract (it looks at the contract between PCC and Smit which was formed in Panama, because Galatours did not have a contract with Smit); the allegiance of Smit, a Panamanian corporation; and Smit's primary base of operations—also Panama.[3] Galatours thus concludes that Panamanian law should control its claim against Smit.

Finally, Galatours argues that even if federal maritime law determines damages here, federal maritime law allows it to recover losses incurred during the time between the accident and the official declaration that the vessel was indeed a total loss.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper once the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). This language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; 2552.

While the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, once that is satisfied, the burden shifts to the nonmovant, who must then come forward with specific facts to show that there is a genuine issue for trial. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) *(en banc )* (citing *Celotex ).* The party opposing summary judgment and who bears the burden of proof at trial must then go beyond the pleadings, and designate by affidavits or depositions, answers and admissions in the record, specific facts showing the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2553. "Neither conclusory allegations nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Texas Tech University,* 80 F.3d 1042, 1047 (5th Cir.1996).

### ANALYSIS

■ As a threshold matter, the Court finds that Smit was never tendered to Galatours as a direct defendant under Rule 14, and thus the only claims against Smit are those made by PCC. In its third-party complaint, PCC claimed:

> in the event that the third-party plaintiff, the Panama Canal Commission, shall be held liable to the plaintiff-counterdefendant, Galapagos Corporacion Turistica "Galatours" S.A., for any amounts whatsoever, then the third-party plaintiff, the Panama Canal Commission, avers that **it is entitled to reimbursement, indemnification, and/or contribution** pursuant to Rule 14(a) and (c) of the Federal Rules of Civil Procedure from the third-party defendant,

---

**3.** Galatours itself is an Ecuadorian corporation, the PCC is a U.S. agency, and U.S. law governed operations on the Canal at the time of the accident.

Smit International Harbour Towage (Panama), Inc. . . .

Rec. Doc. 4 at 15 (emphasis added).

Neither Rule 14(a) nor 14(c) of the Federal Rules of Civil Procedure requires that a third-party defendant be liable to the plaintiff. *See, e.g.*, 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1465 (2d ed.1990). The plain language of Rule 14(c) provides that the impleaded third-party defendant may be liable to *either* the defendant/third-party plaintiff or the plaintiff.[4] Furthermore, Rule 14(c) preserves the defendant/third-party plaintiff's right to choose whether to tender its third-party defendant—a third-party defendant haled into court under Rule 14(c) is not automatically a defendant in the plaintiff's first-filed action. *See, Rosario v. American–Export–Isbrandtsen Lines, Inc.*, 531 F.2d 1227, 1232 n. 14 (3rd Cir.1976)(where a defendant only demands judgment in favor of itself and not in favor of the original plaintiff, that third-party defendant was never tendered under Rule 14(c)). Similarly, Rule 14(a) does not require the liability of a third-party defendant to the plaintiff's claims. Accordingly, to the extent Smit may ultimately be held liable in this action, any such liability is to PCC, and PCC is the only defendant in Galatours's present action.

***The Lauritzen Factors***

■ In light of the fact that PCC, and not Smit, is the defendant at issue in Galapagos' suit, the *Lauritzen* factors point to a finding that United States law applies to the issue of Galatours' damages claim.

In *Lauritzen*, the plaintiff, a Danish seaman, entered into an employment contract with a Danish ship and Danish shipowner while the parties were temporarily in New York. *Lauritzen*, 345 U.S. at 573, 73 S.Ct. at 923. The contract indicated that conflicts arising from the employment would be resolved under Danish law. *Id.* The plaintiff was subsequently injured onboard the ship while docked at a harbor in Havana, Cuba. *Id.* The plaintiff then brought suit under the Jones Act in the District Court for the Southern District of New York, and the ship's owner consented to the jurisdiction of that court. *Id.* at 573–75, 73 S.Ct. at 923–24. After explaining the divergence between Danish and American maritime law, the Court reviewed the seven most influential factors in determining what law to apply in maritime tort claims: place of the wrongful act, law of the flag of the ship on which injury occurred, allegiance or domicile of the injured party, allegiance of the defendant shipowner, place of contract, inaccessibility of the foreign forum, and the law of that forum. *Id.* at 583–91, 73 S.Ct. at 928–33.

The Supreme Court in both *Lauritzen* and in *Rhoditis* noted that these factors were neither exclusive nor all required in every analysis. *Lauritzen*, 345 U.S. at 583, 73 S.Ct. at 928; *Rhoditis*, 398 U.S. at 309, 90 S.Ct. at 1734. Moreover, because the Court presented these factors in the

---

4. Rule 14(c) provides that:

When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant or person who asserts a right under Supplemental Rule C(6)(b)(i), as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make any defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.

context of Jones Act cases, they do not apply seamlessly to the matter at hand. However, applying them to the case at bar, the Court concludes that the general maritime law of the United States applies to the issue of Galatours's recovery of damages.

### 1. The Place of the Wrongful Act

The DISCOVERY caught fire and sank in the Panama Canal, which was under the jurisdiction of the United States at the time of the accident in 1999.[5] So while initially Panama seems to be the place of the wrongful act, for purposes of a choice of law analysis, the fact that the Canal was governed by U.S. law works a contrary result.

### 2. The Law of the Flag

The DISCOVERY is an Ecuadorian ship. None of the parties here has suggested that this Court apply Ecuadorian law.

### 3. Allegiance or Domicile of the Injured Party

Galatours is an Ecuadorian company. Again, none of the parties here has suggested that this Court apply Ecuadorian law.

### 4. Allegiance of the Defendant Shipowner

There is no defendant shipowner here. However, defendant PCC is an agency of the United States federal government.

### 5. Place of Contract

There is no contract at issue between plaintiff and defendant here. Furthermore, Galatours cannot substitute the Panamanian contract between Smit and PCC

just because Smit is a party before this Court. Smit is not the defendant here with respect to Galatours's claim.

### 6. Inaccessibility of the Forum

The United States is more accessible to the present parties than Panama. Galatours filed suit in the United States against PCC under a federal statute. It has consented to the jurisdiction of this Court, and moreover, PCC as an agency of the federal government has waived its sovereign immunity to be sued. Further, the Supreme Court has an "established practice of construing waivers of sovereign immunity narrowly in favor of the sovereign ...." *Lane v. Pena*, 518 U.S. 187, 195, 116 S.Ct. 2092, 2098, 135 L.Ed.2d 486 (1996). So while the PCC has waived its sovereign immunity, this Court agrees with PCC's argument that its waiver of sovereign immunity should not subject it to a foreign body of law that post-dated such waiver.

### 7. The Law of the Forum

The Supreme Court in *Lauritzen* held that "the law of a forum is applied to plaintiffs who voluntarily submit themselves to it ...." *Lauritzen*, 345 U.S. at 591–92, 73 S.Ct. at 933. Galatours filed its action against PCC in this Court, therefore it has submitted itself to the laws of this forum.

### 8. The Defendant Shipowner's Base of Operations

Again, Galatours cannot substitute Smit as the applicable defendant here in order to reach the "Panama" answer. PCC is the defendant, and while it is not a shipowner, this Court takes note of the fact that its base of operations is the United States as a federal agency.

---

**5.** At the time of the accident, the Panama Canal was still under the jurisdiction of the United States. The United States exercised control over the Panama Canal until December 31, 1999. 22 U.S.C.A. § 3602(d)(1)(supp.2001). The fire occurred in October 1999. Compl. ¶ IV.

Under this analysis, this Court finds that federal maritime law applies to Galatours' damage claims.

### Depecage

While Galatours acknowledges that U.S. law is the appropriate law to apply to resolve the issue of PCC's liability, Galatours proposes that this Court apply the doctrine of depecage to bifurcate the issues of liability and damages and to apply Panamanian law to the issue of damages.

The doctrine of depecage allows a court to parcel out issues of damages, liability, and statutes of limitations and to decide these issues under the laws of different states. *Simon v. Philip Morris, Inc.*, 124 F.Supp.2d 46, 75 (E.D.N.Y.2000). However, the doctrine of depecage is more readily applied in cases where strict application of the "most obvious" law would work an injustice against one of the parties. *See, e.g., Severability of Choice of Law Determination for Each Issue (Depecage)*, AM. L. OF PROD. LIAB.3d § 46:5 (2000) (noting that instead of having to apply only one state's laws, "the court must determine the jurisdiction whose law can most appropriately be applied to each issue on the basis of the relation of the pertinent policies of a particular substantive rule to the occurrence and parties"). Where applied at all, the doctrine of depecage typically appears in products liability and mass tort matters.[6]

Plaintiff Galatours argues in its Opposition that federal courts have applied depecage to determine damages in maritime tort actions, pointing this Court to *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 202, 116 S.Ct. 619, 622, 133 L.Ed.2d 578 (1996). However, in *Yamaha*, the Court applied state law to the issue of damages to supplement the general maritime law, which was silent on the issue of damages

recoverable in the death of a non-seaman killed in territorial waters of the United States. The *Yamaha* court was explicit that its holding rested on the fact that neither Congress nor general maritime law provided a remedy for "the wrongful deaths of nonseafarers in territorial waters." *Yamaha*, 516 U.S. at 215, 116 S.Ct. at 628. Furthermore, the Court indicated that it would not allow state remedies to enlarge remedies already provided by general maritime law or statutory authority. *Id.* Thus, *Yamaha* provides no precedent for applying the doctrine of depecage to the case at bar where (1) general maritime law contains explicit provisions on damages recoverable for the total loss of a vessel; and (2) the statute sued upon provides a remedy. *See* 22 U.S.C. § 3773.

Accordingly, this Court finds that the laws of the United States apply.

### Consequential Damages under General Maritime Law

In the alternative, Galatours contends that even if federal maritime law applies to the instant case, federal maritime law allows for recovery of some of its consequential damages. However, it is well-settled that a plaintiff cannot receive damages for loss of use and consequential damages where its vessel has been declared a total loss, as has the DISCOVERY. *Albany Ins. Co. v. Bengal Marine, Inc.*, 857 F.2d 250, 253 (5th Cir.1988) (citing *King Fisher Marine Service, Inc. v. NP Sunbonnet*, 724 F.2d 1181, 1186–87 (5th Cir.1984)); *see also* THOMAS SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 14–6 (3d ed.2001) (noting that "[a]s a general rule, in a case of total loss the measure of damages does not include the loss of use or other consequential damages.").

Furthermore, the statute under which Galatours seeks damages, 22 U.S.C.

---

6. Depecage is not used with any significant frequency in federal courts. Only nine reported cases in this circuit even mention the word.

§ 3773, does not allow consequential damages. First, the statutory language itself only allows for *actual* damages incurred as a result of injuries caused by the PCC. 22 U.S.C. § 3773. Furthermore, the Fifth Circuit interpreted Section 3773's predecessor, 2 C.Z.C. § 293, as only allowing damages provided under "general maritime law." [7] *Gulf Oil Co. v. Panama Canal Co.,* 481 F.2d 561, 569 (5th Cir.1973). In *Gulf Oil,* the Fifth Circuit looked at the legislative history of section 293 to determine damages available to a shipowner whose vessel was damaged due to the negligence of the Panama Canal Company (now the Commission). *Id.* The Fifth Circuit held that "[t]here is no reason to suspect that Congress, familiar for a third of a century in dealing with governmental liabilities in relation to ships, thought that damages were to be determined on any ... basis [other than general maritime law] except with respect to a few isolated specifics." *Id.* at 570. While the plaintiff in *Gulf Oil* did recover for loss of use and consequential damages, that recovery was in the context of *repairable* damage to a vessel. *Id.* at 565. In the case at bar, however, this Court relies upon the Fifth Circuit's interpretation of the statute as it applies to a case in which the vessel has been declared a total loss.

The Fifth Circuit has held that where a vessel has been declared a total loss, "the market value of the vessel is the ceiling of recovery." *Gaines Towing and Transp., Inc. v. Atlantia Tanker Corp.,* 191 F.3d 633, 635 (5th Cir.1999). Accordingly, Galatours' losses for confirmed sales of tickets, publicity, merchandising, loss of image, expenses in Panama, repatriation, and liquidation of personnel are not compensable in this action.

---

7. 2 C.Z.C. § 293 was part of the Canal Zone Code that has since been superceded by the Panama Canal Act, as codified in 22 U.S.C. §§ 3601–3873. When comparing section 293

## CONCLUSION

Galatours has not sufficiently demonstrated the existence of a genuine issue of material fact that would defeat Smit and PCC's motion for partial summary judgment striking Galatours' claims for loss of use and other consequential damages. Rather, the Court has been confronted with a choice of law question, and the undisputed facts support the application of federal maritime law to the issue of damages in the instant matter. Under federal maritime law, a plaintiff shipowner cannot recover damages for loss of use or consequential damages where the vessel has been declared a total loss; the only recovery allowed is the fair market value of the vessel at the time of loss. Accordingly;

**IT IS ORDERED** that defendant's **Motion for Partial Summary Judgment** (Rec.Doc. 43) should be and is hereby **GRANTED.**

of the old act with section 3773 of the newer act, this Court finds that the two are substantively identical.