[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13830

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 21, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 06-61630-CV-WPD

JAMESON COOPER,

                                                                                    Plaintiff,

                                    versus

MERIDIAN YACHTS, LTD., a British Virgin
Islands corporation, in personam,
The M/Y Meduse, a 198 foot Fedship registered
in the Cayman Islands with Official Number 729007,
her engines, tackle, apparel and other appurtenances, in rem,
VULCAN, INC. a Washington corporation,
VULCAN MARITIME, LTD., a foreign corporation,
in personam

                                                    Third-Party Plaintiffs-Appellants,


DE VRIES SCHEEPSBOUW, B.V.,
d.b.a. Feadship,
F. DE VOOGT, NA,
d.b.a. Feadship,
FEADSHIP AMERICA, INC.,
d.b.a. Feadship,
DE VOOGT NAVAL ARCHITECTS, B.V.,

                                                    Third-Party Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 21, 2009)

Before BARKETT and FAY, Circuit Judges, and TRAGER,[*] District Judge.

TRAGER, District Judge:

This case concerns an injury to a sea captain and the subsequent settlement

of his claims by the third-party plaintiffs. The present appeal arises out of the

third-party plaintiffs' attempt to recover the sums paid to settle the maritime

personal injury action. Specifically, the third-party plaintiffs seek indemnity,

contribution and equitable subrogation from the third-party defendants, who

allegedly constructed, designed or maintained the defective foodlift that caused the

injury. The crucial question below was whether Dutch law or federal maritime

law applied to the third-party action. The district court, finding in favor of Dutch

law, dismissed the action, determining on summary judgment that the third-party

claims were barred by a ten-year statute of repose.

The first set of issues presented before this Court revolve around a

shipbuilding agreement entered into between the shipowner third-party plaintiff

_____

[*] Honorable David G. Trager, United States District Judge for the Eastern District of New York, sitting by designation.

2

and the shipbuilder third-party defendant. Two provisions within the shipbuilding agreement are particularly relevant: a Dutch choice of law clause and a limitation of liability provision. We first look at whether either of these two provisions govern any of the third-party claims. If so, we then determine the effects the applicable provision has on those claims.

As a signatory to the agreement, the shipowner is the only third-party plaintiff who is potentially bound by the Dutch choice of law provision. The broad wording of that choice of law provision indicates that it is applicable to the shipowner's third-party claims against the shipbuilder. In any event, whether Dutch law applies to the shipowner's third-party claims is ultimately immaterial because the agreement's limitation of liability provision explicitly prevents the shipowner from recovering consequential damages or other indirect damages, effectively barring the shipowner's third-party claims against either the shipbuilder as well as the ship-designer because of another, related clause in the agreement.

The second set of issues presented before this Court center on those third-party claims that are wholly independent of the shipbuilding agreement. With respect to those third-party claims, it must first be determined whether they are governed by Dutch law, federal maritime law, or a third jurisdiction's law. The substance of the applicable law must then be analyzed in order to find whether

3

such law would bar the action as untimely. The other third-party plaintiffs include the ship on which the sea captain was injured, the ship's manager and the injured sea captain's maritime employer.

The claims brought against the Dutch shipbuilder and designer by the third-party plaintiffs who are non-signatories to the shipbuilding agreement are governed by Dutch law because the Netherlands would have an interest in the resolution of those disputes, whereas the United States has little or no such interest. Moreover, the third-party plaintiffs have failed to provide relevant information regarding other possibly interested jurisdictions.

A review of Dutch law indicates that the third-party claims that are based on a strict liability theory are barred by the Dutch statute of repose. However, the third-party plaintiffs also allege general tort claims. For these claims, Dutch law provides a separate statute of limitations. That statute of limitations allows the general tort claims to proceed.

Finally, federal maritime law applies to the claims against the Dutch shipbuilder's and designer's American affiliate, which is incorporated in the United States, making all third-party claims against that defendant timely.

## FACTUAL BACKGROUND

### (1)

On the 28th or 29th of July 2005, Jameson Cooper ("Cooper"), the captain of a 198-foot motor yacht named the M/Y Meduse (the "Meduse"), was injured when the ship's dumbwaiter or foodlift (referred to by the parties as the "foodlift") landed on his leg, causing severe injuries. According to Cooper, the accident occurred while he was attempting to retrieve some of his clean laundry that had become lodged in a space between the floor of the foodlift and the ship's deck. In an effort to free the clothes, Cooper placed his left foot on the floor of the foodlift and his right foot on the deck of the Meduse. At the moment that he was able to free the articles of clothing, the foodlift fell, injuring his leg. The Meduse was located somewhere in the Red Sea at the time of the accident.

De Vries Scheepsbow B.V. ("De Vries") is the entity that constructed the Meduse for Meridian Yachts LTD ("Meridian"). F. De Voogt, N.A. ("De Voogt") is the entity that De Vries subcontracted to design the ship. De Vries and Meridian entered into a shipbuilding agreement (the "agreement") on January 31, 1994, which governed the purchase and manufacture of the vessel. The agreement, which was written in English, was executed by Meridian as buyer and De Vries as builder. The ship was built in the Netherlands and was delivered to Meridian on January 24, 1997. The delivery, according to appellees, took place at a Dutch seaport. The parties further agreed that the ship's shakedown cruise

would be to waters off North America and that when the Meduse arrived in Florida waters, De Vries would send a finish crew to resolve any issues that became apparent during that cruise. Final payment for the Meduse was to be made in Florida after the finish crew completed its job.

The shipbuilding agreement contains four relevant clauses. Article 13 has a choice of law provision:

> This Agreement, and all disputes arising out of or in connection with it, shall be construed in accordance with and shall be governed by the Dutch law.

The agreement also contains a limitation of liability provision in Article 10. Its critical language provides:

> [T]he Builder shall have no liability whatsoever for any loss or damage directly arising from the defectiveness or deficiency of parts . . . except if resulting from intentional conduct or gross negligence of the Builder or his servants. Liability of the Builder for loss of business, loss of profits, consequential damages or other (indirect) damage, however, is always excluded . . . .

Additionally, Article 11 of the agreement appears to permit third-parties to take advantage of the limitation of liability provision. It provides:

> All exonerations and limitations of liability stipulated in favor of any party, shall also apply in favor of the servants, sub-contractors and suppliers of such party and of those directly or indirectly contracted by sub-contractors and suppliers.

6

However, another clause in the agreement, Article 20(4), appears to prevent third-parties from benefitting from any portion of the agreement by stating:

> Nothing in this Agreement, whether express or implied, is intended to confer any benefits, rights or remedies on any person other than the parties to this Agreement.

**(2)**

The Meduse was and is registered in the Cayman Islands. The ship travels worldwide and has docked in South Florida as well as at other ports in the United States. Meridian, which both originally purchased and currently owns the Meduse, is a business entity organized under the laws of the British Virgin Islands. Vulcan Maritime LTD ("Vulcan employer"), Cooper's employer at the time of his accident, is a British Virgin Islands Corporation. Vulcan, Inc. ("Vulcan manager"), which was alleged by Cooper to have been the manager of the Meduse and its crew at the time of his accident, is incorporated in the state of Washington – where the four appellants allege it has its principal place of business (Vulcan manager and Vulcan employer are referred to as the "Vulcan appellants" and Meridian, the Meduse, and the Vulcan appellants together are referred to as

"appellants" or the "four appellants").[1]  The four appellants state in their briefs that, as alleged by the plaintiff Cooper in his complaint, Meridian and Vulcan employer have their principal places of business in Florida.  In their answer to Cooper's complaint, however, the four appellants had denied these allegations. The four appellants also claim that they are all beneficially owned by a U.S. citizen and that a U.S. citizen is president of Meridian, Vulcan manager and Vulcan employer.  However, in their answer to Cooper's amended complaint, they denied the existence of that U.S. beneficial owner and denied Cooper's allegation that the owner was personally involved in hiring Cooper and "regularly gave orders to Cooper regarding the [Meduse's] movements, itinerary and operational budget."

The shipbuilder and ship-designer appellees, De Vries and De Voogt, are both foreign corporations with their principal places of business in the Netherlands

---

[1]  There is nothing in the record explicitly confirming Vulcan, Inc.'s management role or the specific responsibilities that it undertook in fulfilling that role.  Indeed, in its answer to Cooper's amended complaint, the four appellants denied that Vulcan manager was involved in the management of the Meduse and its crew.  Vulcan manager's role is further confused by the four appellants' admission that Fraser Yachts Florida, Inc. ("Fraser Yachts"), a Florida based company, was the entity involved in managing the Meduse for Meridian and Vulcan employer and that it interviewed Cooper for his position as captain of the Meduse.  Fraser Yachts was originally a defendant in the lawsuit brought by Cooper, but was dismissed from the action on March 15, 2007.  In fact, Cooper himself was confused as to Vulcan, Inc.'s actual function, and originally stated a Jones Act claim against the entity believing that it might have been his maritime employer.

(De Vries and De Voogt are referred to as the "Dutch shipbuilding appellees"). The four appellants allege that the Dutch shipbuilding appellees, along with their American affiliate, Feadship America, Inc. ("Feadship America"), conduct business in the United States under a market consortium or a joint venture known as Feadship, which maintains a local office in Florida (De Vries, De Voogt and Feadship America are referred to as "appellees"). Specifically, the four appellants allege that, as part of the Feadship venture, the Dutch shipbuilding appellees design, manufacture, market, sell and distribute Feadship yachts, including the Meduse.

Feadship America is a Florida corporation with its principal place of business in Florida. The four appellants allege that the Feadship venture conducts business in the U.S. through Feadship America, and that Feadship America takes part in the sale and distribution of Feadship designed and manufactured yachts. The four appellants, however, never allege that Feadship America ever participated specifically in the sale or distribution of the Meduse. Feadship's website, under the heading "Feadship America," advertises that over half of its clients are based in the United States and that its Florida office serves as a base of operations for "Feadship people" who travel to the United States from the Netherlands. The website further states, under the heading "Feadship Holland,"

that Feadship was established in 1949 by De Vries, De Voogt and Royal Van Lent, all Dutch entities, and that Feadship's head office is located in Haarlem, Netherlands where it shares offices with De Voogt. De Vries and Royal Van Lent each own fifty percent of Feadship America's stock. According to appellees, the foodlift was designed, manufactured and installed in De Vries' shipyard by a Dutch company called All-In Lifttechniek B.V., which is not a party to this action. Appellees further claim that Feadship America had nothing to do with the sale, manufacture or design of the Meduse.

## PROCEDURAL HISTORY

On October 27, 2006, Cooper filed suit in The United States District Court for the Southern District of Florida (the "district court") seeking damages for the injuries he suffered onboard the Meduse. Cooper asserted a claim for general maritime unseaworthiness against Meridian as owner of the ship and against the Meduse <u>in rem</u>. Cooper further alleged a claim for Jones Act negligence[2] against Vulcan Maritime LTD as his maritime employer and a general maritime negligence claim against Vulcan, Inc. as the manager of the Meduse and its crew.

---

[2] The Jones Act provides seamen with a cause of action against their employers for negligence resulting in either injury or death. <u>Tucker v. Fearn</u>, 333 F.3d 1216, 1219 (11th Cir. 2003).

On July 5, 2007, the four appellants filed a third-party complaint against De Vries, the shipbuilder, De Voogt, the designer of the ship, and Feadship America, their American affiliate. The four appellants sought to hold them liable for any damages that could potentially be awarded to Cooper. The amended third-party complaint alleges that the foodlift that injured Cooper was "designed, installed, constructed, manufactured and inspected by one or more of the [appellees]." The four appellants claim that by negligently placing the defective foodlift in the stream of commerce, appellees breached an independent duty they owed to Cooper, making them liable to the four appellants for indemnity, contribution and equitable subrogation under federal maritime law. The third-party complaint, however, does not commit itself to a particular theory of liability, referencing both negligence and strict liability.

On November 30, 2007, the four appellants settled Cooper's personal injury action and the case remained pending only with respect to the four appellants' claims against the Dutch shipbuilding appellees and Feadship America, their American affiliate. Following settlement, the four appellants filed an amended third-party complaint seeking recovery of the sums paid to Cooper. There is nothing in the record evidencing either the total amount of the payment to Cooper or the individual amounts paid by each of the four appellants. Thus, it is not clear

11

which, if any, of the four appellants would be entitled to a judgment in favor of their right to indemnity, contribution and equitable subrogation.

On November 28, 2007, appellees moved for summary judgment. On June 3, 2008, the district court held that because the agreement between Meridian and De Vries governed the construction of the Meduse, including the allegedly defective foodlift, Meridian's claims, which arose out of or in connection with the agreement, were subject to the agreement's Dutch choice of law provision contained in Article 13. Therefore, claims brought by Meridian, the only one of the four appellants who was a signatory to the agreement, were barred by the ten-year Dutch statute of repose. The decision neither discussed whether Dutch law actually contained a ten-year statute of repose or whether the statute of repose was applicable to Meridian's claims because the four appellants never contested the substance of appellees' presentation of Dutch law. In the alternative, the district court found that Meridian's third-party claims were also barred by the limitation of liability clause in Article 10 of the agreement.

The district court further noted that, under some circumstances, closely related entities may be bound by the terms of an agreement even if they were non-signatories. However, the court declined to analyze whether any of the remaining appellants were also bound by the choice of law provision contained in Article 13,

12

finding instead that Dutch law applied to bar all of the third-party claims without regard to the agreement. The district court, after looking at several other factors, placed the greatest weight on where the wrongful act occurred, and found that Dutch law applied to all four appellants' claims because that is where the ship and the allegedly defective foodlift were built. The court, therefore, granted the summary judgment motion, finding that the third-party claims for indemnity, contribution and equitable subrogation were barred by the ten-year Dutch statute of repose.

**DISCUSSION**

It is clear that this court's jurisdiction lies in admiralty. Tri-State Oil Tools Indus., Inc. v. Delta Marine Drilling Co., 410 F.2d 178, 186 (5th Cir. 1969); see also Casino Cruises Inv. Co., L.C. v. Ravens Mfg. Co., 60 F. Supp. 2d 1285, 1288 (M.D. Fla. 1999) ("It is well-established that a noncontractual indemnity or contribution action, such as the one in this case, is within the scope of the federal courts' admiralty jurisdiction where the action is derived from an underlying maritime tort."). As this case lies in admiralty, federal maritime conflict of laws control. F.W.F., Inc. v. Detroit Diesel Corp., 494 F. Supp. 2d 1342, 1352 (S.D. Fla. 2007) ("[A] federal court sitting in admiralty must apply federal maritime choice-of-law rules." (quoting Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d

13

663, 670 (9th Cir. 1997))).  Furthermore, we review choice of law questions de novo.  AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 508 F.3d 995, 999 (11th Cir. 2007).

## A.  The Shipbuilding Agreement's Effect on the Third-Party Claims

We turn to the effect, if any, that the agreement has on the four appellants' third-party claims.  First, we discuss whether the agreement's Dutch choice of law and limitation of liability provisions control the third-party claims brought by Meridian, the shipowner, against De Vries, the shipbuilder, the agreement's only two signatories.  If either one of these provisions controls, we then evaluate whether and to what extent they alter Meridian's ability to recover.  Second, we look to see whether the remaining appellants and the appellees are either bound by or have the ability to take advantage of these provisions, which were set out in a contract they never signed.

### 1. Meridian (Shipowner) v. De Vries (Shipbuilder) - The Signatories to the Agreement

The only two parties in this action that signed the agreement were Meridian, the shipowner, and De Vries, the shipbuilder.  As a signatory, Meridian's third-party claims against De Vries are governed by both the Dutch choice of law provision and the limitation of liability provision.

14

## a. Dutch Choice of Law Provision

With respect to the issue of what law governs, Meridian does not argue that the agreement's choice of law provision is invalid.  Instead, the shipowner asserts that, because its claims for indemnity, contribution and equitable subrogation are not "disputes arising out of or in connection with" the agreement, the choice of law provision does not apply to those causes of action.  In determining whether a choice of law clause contained in a contract between two parties also governs tort claims between those parties, a court must first examine the scope of the provision.  See Green Leaf Nursery v. E.I. DuPont de Nemours & Co., 341 F.3d 1292, 1300-01 (11th Cir. 2003).  A choice of law provision that relates only to the agreement will not encompass related tort claims.  Id. at 1300.  For example, a provision providing that "[t]his release shall be governed and construed in accordance with the laws of the State of [X]," will be construed narrowly as it only purports to govern the agreement itself and does not refer "to any and all claims or disputes arising out of the" agreement.  Id.

The provision at issue here, however, is clearly meant to be read broadly.  The provision provides that "all disputes arising out of or in connection with" the agreement "shall be construed in accordance with and shall be governed by the Dutch law."  Such a provision purports to govern "all disputes" having a

15

connection to the agreement and not just the agreement itself. Although pursued as an indemnity/contribution action, Meridian's claims are based on its allegation that the foodlift constructed by De Vries, as part of the agreement, was negligently or defectively manufactured. Such an action is necessarily connected to the agreement. See Int'l Underwriters AG & Liberty Re-Insurance Corp., S.A. v. Triple I: Int'l Invs., Inc., 533 F.3d 1342, 1348-49 (11th Cir. 2008) ("[W]here the dispute occurs as a fairly direct result of the performance of contractual duties . . . , then the dispute can fairly be said to arise out of or relate to the contract in question." (quoting Telecom Italia, SPA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001) (alteration in original))). Accordingly, Meridian's third-party claims against De Vries fall under the choice of law provision and are therefore governed by Dutch law.

Before the district court, however, the parties were less than helpful in explicating the content of Dutch law. The four appellants argue that the evidence introduced by appellees concerning the Dutch statute of repose was insufficient to demonstrate the untimeliness of their third-party claims.[3] In support of their

---

[3] The four appellants never made this legal argument before the district court. See Cooper v. Meridian Yachts, Ltd., No. 06-61630-CIV, slip. op. at 5 (S.D. Fla. June 3, 2008) ("Third-Party Plaintiffs do not argue that their claims would survive the application of Dutch law."). In the district court, appellants offered no expert affidavit on this point and on appeal they rely solely on a contradiction in appellees' supporting papers, discussed infra at footnote 4.

16

summary judgment motion, appellees presented the affidavit of a Netherlands

attorney that stated:

> [U]nder Dutch law any product liability claim would have become
> timebarred by virtue of Article 6:191, Paragraph 2 providing for an
> absolute extinction of such claim after the lapse of 10 years after the
> day the product came into circulation. Accordingly, such claim
> would have become timebarred in any case by January 24, 2007, as
> *M/Y Meduse* was delivered on January 24, 1997.

The affidavit, however, is incomplete. Specifically, it failed to apprise the

district court of the separate statute of limitations that Dutch law creates for

negligence claims as opposed to claims on the basis of strict liability.[4] Our

independent review of Dutch law confirms that, while a strict products liability

action is untimely when brought more than ten years after the defective product

was first put into circulation, there is a separate five-year limitations period from

---

[4] This is not the only questionable representation in the affidavit. According to the affidavit, "[t]he provisions on product liability (Title 3, Section 3, Article 6:185 CC *et seq.*) do not apply as Meridian's claim is not a claim for death or personal injury (of its own) or for (physical) damage caused by the product to an object in their ownership." Presumably, the affidavit is seeking to draw a distinction between Cooper's claims and the third-party claims. The affidavit cites no authority confirming that Dutch law would draw such a distinction. In fact, Article 6:190, paragraph 1 of the Dutch Civil Code explicitly permits a claim under Article 6:185 to be brought where the plaintiff seeks to recover damages caused by personal injury. According to Article 6:191, there is a ten year statute of repose with regard to a third-party's right of recourse against a producer, which arises out of the third-party's direct liability to the injured party pursuant to Article 6:185. This implies that third-parties may bring contribution and indemnity actions against the producer pursuant to Article 6:185. Moreover, if appellees' argument was true, it would undercut appellees' statute of repose defense, which rests on the fact that the defense in Article 6:191 is part and parcel of the products liability provisions of Article 6:185 of the Dutch Civil Code.

the date of injury for negligence claims.[5]  This research confirms the untimeliness of Meridian's claims against De Vries, to the extent that such claims allege strict liability under Article 6:185 of the Dutch Civil Code.  Specifically, Article 6:190, paragraph 1 of the Dutch Civil Code provides that "[t]he liability referred to in Article 185, paragraph 1 extends to (a) damage caused by death or personal injuries . . . ."  The Civil Code of the Netherlands 687 (Hans Warendorf, Richard Thomas & Ian Curry-Sumner, trans., Kluwer Law International 2009).  The current action falls squarely within this definition because it seeks to recover damages caused by Cooper's injuries resulting from the allegedly defective foodlift.  Furthermore, Article 6:191, paragraph 2 provides a statue of repose for all strict products liability actions brought pursuant to Article 6:185, including a third-party action for indemnity and contribution:

> The right to damages of the injured person against the producer pursuant to Article 185, paragraph 1 is extinguished on expiry [sic] of ten years from the beginning of the day following that on which the producer put the thing which caused the damage into circulation.  The same applies to the right of a third person who is also liable for the damage, with respect to his right of recourse against the producer.

---

[5] Rule 44.1 of the Federal Rules of Civil Procedure permits us to conduct independent research on foreign law.  Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").  Furthermore, the district court's interpretation of foreign law is a question of law that we review de novo.  Seguros del Estado, S.A. v. Scientific Games, Inc., 262 F.3d 1164, 1171 (11th Cir. 2001).

Id. at 688.  Thus, Meridian's strict products liability claim was extinguished under Dutch law because the third-party complaint was filed more than ten years after the delivery of the Meduse.

Moreover, the four appellants presented no evidence on the Dutch law statute of repose that would demonstrate the timeliness of an action for strict products liability brought under Article 6:185.[6]   If they had a contrary view of Dutch law, it was their duty to present such law to this court.  Cf. Cont'l Technical Servs., Inc. v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (stating that "having the power to take notice of state law [does not] mean that federal courts must scour the law of a foreign state for possible arguments a claimant-particularly a claimant with counsel-might have made.").  Having failed to do so, we rely on our research of foreign law for this point, which indicates that Meridian is time-barred from bringing a third-party claim under a strict liability theory.

Although appellees have established that Meridian's strict products liability claim is time-barred, they have failed to explain why Meridian cannot take advantage of the separate limitations period recognized under Dutch law for

---

[6] Although the four appellants also provided an affidavit prepared by a Netherlands attorney, that affidavit provided no information concerning the Dutch products liability statute of repose.

general tort claims. Dutch law further indicates that the statute of limitations for actions brought under the general tort provisions, pursuant to Article 6:162 of the Dutch Civil Code, expires five years from the day after Cooper sustained his injuries. Klaas Bisschop & Sjoerd Meijer, "Netherlands," The International Comparative Legal Guide to: Product Liability 243 § 5.2 (Global Legal Group 2008) ("A cause of action for damages on the basis of an unlawful act cannot be brought after a lapse of five years after the commencement of the day following the day on which the aggrieved party became aware of both the damage and of the person or legal entity liable. In any event an action cannot be brought after a lapse of twenty years following the event that caused the damage."). Accordingly, Meridian's third-party claims are not time-barred if brought as general tort claims, i.e. negligence. Dennis Campbell & Christian Campbell, International Product Liability I/373 (2006) ("Under [Dutch] common tort rules, the general extinction period is twenty years after the damage causing event. Therefore, if a victim can no longer file a claim based on strict products liability, he can submit a claim based on the general tort provisions. However, in that event, he is not able to benefit from the strict liability imposed on the producer and is then–in principle–required to prove fault.").

b. *Limitation of Liability Provision*

20

In any event, we conclude that the limitation of liability clause in Article 10 precludes all of Meridian's claims against the shipbuilder and, by virtue of Article 11, the ship-designer.[7]  As the choice of law provision provides that the agreement is governed by Dutch law, we must also interpret Article 10 under Dutch law.  See Green Leaf Nursery, 341 F.3d at 1300.  The only guidance on whether this clause is enforceable under Dutch law was presented in an affidavit submitted by appellees, which stated that:

> Under Dutch law, the exclusions and limitations of liability set forth in Article 10 of the Agreement, specifically and explicitly agreed upon between two companies, are fully valid.  Freedom of contract is the basis of Dutch Civil Law and there exists no provision in the Dutch Civil Code prohibiting such exclusions or limitations of liability as agreed between De Vries and Meridian.
>
> . . .
>
> [T]he Agreement expressly excludes liability for consequential and (other) indirect damage, and all the Third-Party Claims fall under this category under Dutch law.  Under Dutch Law [sic], this limitation is as well fully acceptable.  This also follows from standing

---

[7] The district court found that the "limitation of liability clause in Article 10 of the Agreement is enforceable" because "the Third-Party Plaintiff's [sic] claims ar[o]se out of or in connection with the Agreement."  Cooper, slip. op. at 7.  Appellants interpret this to mean that whether Article 10 applies is somehow contingent upon the applicability of Article 13.  Appellants' Initial Brief at 23 (arguing that "the issue whether Article 10 barred [their] claims only becomes relevant if it is first determined that the third-party claims fall within the scope of Article 13's choice-of-law clause.").  It is apparent, however, that the limitation of liability provision would apply even if there were no choice of law clause included in the agreement, and Article 10's language is sufficiently broad to encompass Meridian's third-party claims against De Vries.

21

jurisprudence, also from the Dutch Supreme Court, e.g. HR 12 July 2002, *NJ 2002/542*, in which case the validity of exclusion of liability for consequential and indirect damage was again confirmed.

Normally, an un-rebutted affidavit from an attorney on foreign law would be sufficient to establish the substance of that law. While it no doubt would make our task easier to simply accept this representation of Dutch law, we have doubts about this source on Dutch law, considering the affidavit's incomplete, if not inaccurate, representations concerning the Dutch statute of repose. Furthermore, on the issue of limitation of liability, the affidavit gives no citation to any provision of the Dutch Civil Code and relies on one Dutch Supreme Court case, which impliedly would support its position but fails to provide a copy and translation of that opinion. Moreover the affidavit's reference to "standing jurisprudence" is not explained.

Although we endeavored to conduct independent research of Dutch law on this issue, we were unsuccessful. Unlike the issue of the scope of the Dutch statute of repose, we were unable to find any materials in English on the limitation of liability issue. Accordingly, we follow the usual rule where the parties have not taken steps to present the court with relevant foreign law and turn to the law of the forum in interpreting the limitation of liability provision. See Cavic v. Grand Bahama Dev. Co., Ltd., 701 F.2d 879, 882 (11th Cir. 1983) ("When both parties

have failed to prove the foreign law, the forum may say that the parties have acquiesced in the application of the local law of the forum." (quoting Restatement (Second) of Conflict of Laws § 136 cmt. h (1971))); see also Mutual Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1321-22 (11th Cir. 2004).

In this instance, this default analysis leads to the same result. The initial question is what is the forum for this purpose. One might presume it to be federal maritime law. However, a contract for the sale or construction of a ship is not within the federal courts' admiralty jurisdiction. Richard Bertram & Co. v. The Yacht, Wanda, 447 F.2d 966, 967 (5th Cir. 1971). Thus, as a disinterested forum, it would seem appropriate for a federal court sitting in admiralty to look to the state law with an interest in the issue. We are left to determine which state law that is. We conclude that Florida law provides the relevant law on this issue.

From a governmental interest point of view, no individual jurisdiction within the United States appears to have a significant interest in this action. It concerns foreign entities, namely companies from the British Virgin Islands and the Netherlands. The parties have not provided this court with sufficient information on how British Virgin Islands law or Dutch law would resolve this dispute. Furthermore, it is reasonable to apply Florida law because it was the original forum of this litigation, it has some factual connections to this litigation

23

and no other jurisdiction has stronger ties. See, e.g., Cavic, 701 F.2d at 882 ("Because the parties did not raise any conflict of laws issue in the district court and do not raise it on appeal, under applicable conflict of laws principles the law of the forum ( [Florida] ) would govern the substantive issues due to the absence of facts justifying the application of the law of some other jurisdiction." (internal quotation marks omitted)).

Having determined that Florida law applies, we need not decide whether the agreement is a contract for the sale of goods or for services. Though the provisions of the Florida Uniform Commercial Code ("UCC") would apply only if the contract were deemed a sale of goods, the limitation of liability provision governs to bar Meridian's third-party claims regardless of whether the UCC or general Florida contract law applies.

Turning first to the UCC, Florida's version of the UCC permits a party to exclude liability for consequential damages. Fla. Stat. § 672.719 ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable."). Moreover, "[c]onsequential damages resulting from the seller's breach include . . . (b) Injury to person or property proximately resulting from any breach of warranty." Fla. Stat. § 672.715(2). Meridian's third-party claims against De Vries are, therefore, barred by the agreement's limitation of liability provision,

24

as Cooper's injuries fall within the realm of consequential damages, which are clearly excluded by the clause, and there is no evidence suggesting that the provision is unconscionable.

Even if the agreement is considered a service contract, De Vries would still be shielded from liability. In that case, general Florida contract law would apply. Under Florida law, "[e]xculpatory provisions which attempt to relieve a party of his or her own negligence are generally looked upon with disfavor, and Florida law requires that such clauses be strictly construed against the party claiming to be relieved of liability." Sunny Isles Marina, Inc. v. Adulami, 706 So. 2d 920, 922 (Fla. Dist. Ct. App. 1998). "Such provisions, however, have been found to be valid and enforceable by Florida courts where the intention is made clear and unequivocal." Id.; see also Murphy v. Young Men's Christian Ass'n of Lake Wales, Inc., 974 So. 2d 565, 568 (Fla. Dist. Ct. App. 2008) ("'[Exculpatory] clauses are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away.'" (quoting Southworth & McGill, P.A. v. S. Bell Tel. & Tel. Co., 580 So. 2d 628, 634 (Fla. Dist. Ct. App. 1991))).

Florida law would give effect to the provision at issue here as the contractual language is clear and unequivocal. The agreement provides that De Vries "shall have no liability whatsoever for any loss or damage directly arising from the defectiveness or deficiency of parts . . . except if resulting from intentional conduct or gross negligence of [De Vries] or [its] servants," but that "[l]iability . . . for loss of business, loss of profits, consequential damages or other (indirect) damage . . . is always excluded . . . ." The four appellants allege negligence and strict liability, but never allege gross negligence or intentional conduct. The agreement is clear that the only possible liability is for direct damage resulting from gross negligence or intentional conduct.[8] It is irrelevant whether Meridian's claims are classified as either direct or indirect/consequential damages because the agreement disclaims liability under both negligence and strict liability theories regardless of the damages sought. Thus, under the terms of the contract Meridian cannot recover.

The limitation of liability provision is clear and unequivocal under Florida law even though it does not use the word "negligence." Florida courts do not, as a rule, require the "use [of] terms such as 'negligence' or 'negligent acts' in order to

_____

[8] We express no opinion on whether Florida law would enforce a contract relieving a party for damages, either direct or indirect/consequential, based on gross negligence or intentional conduct.

validly release negligence claims." Cain v. Banka, 932 So. 2d 575, 579 (Fla. Dist. Ct. App. 2006) (finding that an exculpatory clause absolving the defendant of "any and all liability, claims, demands, actions, and causes of action whatsoever" to be sufficient to include the plaintiff's negligence action); see also Greater Orlando Aviation Auth. v. Bulldog Airlines, Inc., 705 So. 2d 120, 122 (Fla. Dist. Ct. App. 1998) (stating that the "contention that Florida courts have implied that the only method of conveying a clear and unambiguous expression of an intention to be free from liability for one's own negligence is to use the word 'negligence,' is erroneous").

Meridian argues that the limitation of liability provision in Article 10 of the agreement does not govern its third-party claims because the provision contains no specific language limiting liability based on personal injury to third-parties caused by De Vries' negligence or grounded in strict liability. Meridian cites to a New York case, Fendley v. Power Battery Co., 167 A.D.2d 260, 561 N.Y.S.2d 760 (1st Dep't 1990). However, in Fendley, the court found that the limitation of liability clause did not apply because there was no indication – of any kind – that the provision excluded recovery for tort damages. The Fendley court reasoned that nothing in the contract "suggest[ed] even obscurely that the parties were contracting with respect to their liabilities grounded in tort." Id. at 262 (emphasis

27

added). Specifically, the "clause ma[d]e [no] reference to 'personal injuries', 'negligence', 'strict products liability', or employ[ed] other words, such as 'consequential damages.'" Id.

Unlike in Fendley, the provision at issue here clearly demonstrates that its intent was to contract out of tort claims. The limitation of liability provision explicitly states that liability for "consequential damages or other (indirect) damage . . . is always excluded." Furthermore, the limitation of liability provision specifically references "gross negligence," making clear that the exclusion of consequential or other indirect damages was meant to encompass tort claims. This differentiates the provision from the clause at issue in Fendley, which did not use terms such as "consequential damages" or "gross negligence." Thus, Meridian's action against De Vries is completely barred by the agreement's limitation of liability provision.[9]

---

[9] Alternatively, appellants argue that the limitation of liability provision is against public policy. As they failed to raise this argument before the district court, we need not address it here. See Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc., 990 F.2d 598, 605 n.14 (11th Cir. 1993) (confirming that "consideration of a[] [public policy] argument raised for the first time on appeal is at [the court's] discretion."). Even if we were to consider the argument, it appears to be lacking in merit. Under Florida law, "[c]ontractual provisions by which a party seeks exculpation for his own negligence, although not favored in the law, have been upheld as not violative of public policy where the contract is between persons of equal bargaining power and the provisions are clear and unambiguous." Key Biscayne Divers, Inc. v. Marine Stadium Enters., Inc., 490 So. 2d 137, 138 (Fla. App. Dist. Ct. 1986). The limitation of liability provision is "clear and unambiguous," and there is no evidence suggesting that Meridian and De Vries did not have equal bargaining power.

28

*2. Meridian (Shipowner) v. De Voogt (Ship-Designer) & Feadship America (American Affiliate) - Application of the Agreement's Third-Party Beneficiary Provision (Article 11) to Non-Signatories*

Meridian has also sued two parties who did not sign the agreement, De Voogt, the ship-designer, and Feadship America, its American affiliate. We must, therefore, determine whether these non-signatories may take advantage of the agreement's third-party beneficiary provision. For the reasons discussed herein, only De Voogt, the ship-designer, may benefit from the provision.

The agreement has two seemingly conflicting provisions, Articles 11 and 20(4), that need to be reconciled before we can determine whether non-signatories may utilize the limitation of liability provision. Article 11 of the agreement provides that "limitations of liability stipulated in favor of any party, shall also apply in favor of the servants, sub-contractors and suppliers of such party . . . ." Article 20(4), on the other hand, provides: "Nothing in this Agreement, whether express or implied, is intended to confer any benefits, rights or remedies on any person other than the parties to this Agreement." The affidavit provided by appellees asserts that according to Article 6:253, paragraph 1 of the Dutch Civil Code, Article 11 of the agreement is a valid provision, that permits De Voogt and

Feadship America, as Meridian's sub-contractors or servants, to benefit from the limitation of liability provision in Article 10. The affidavit, however, fails to address Article 20(4), which seems to prevent non-signatories from enforcing the limitation of liability provision against Meridian. Neither side submitted evidence concerning how Dutch law would either interpret Article 20(4) or resolve this seeming contradiction.

This apparent contradiction of terms can be resolved by either giving both provisions effect or finding that one trumps the other. In either case, Article 11, which permits sub-contractors and servants to take advantage of the agreement's limitation of liability provision, governs the questions presented here. Article 20(4) could be viewed to apply only in preventing third-parties from invoking "benefits, rights or remedies " conferred under the agreement in a suit against one of the signatories. So viewed, it would have no application to a non-signatory seeking to invoke a separate contractual provision as a defense. Article 11, by contrast, provides a shield, allowing a particular class of third-parties to invoke any agreed upon limitation of liability. Thus, the two clauses do not necessarily contradict each other. Even if the two clauses are deemed irreconcilable, Florida courts have held that "'[w]here two clauses of an agreement are repugnant and cannot stand together, the first shall be received and the latter rejected.'"

30

Copacabana Records, Inc. v. WEA Latina, Inc., 791 So. 2d 1179, 1180 (Fla. Dist. Ct. App. 2001) (quoting Boden v. Atl. Fed. Sav. and Loan Ass'n, 396 So. 2d 827, 829 (Fla. Dist. Ct. App. 1981)). Thus, we can disregard Article 20(4) of the agreement.

It remains to be decided whether De Voogt and Feadship America can take advantage of the limitation of liability provision pursuant to Article 11. According to Article 6:253 of the Dutch Civil Code, third-parties can "invoke the contract against any of [the parties], if the contract contains a stipulation to that effect and if the third person so accepts." The Civil Code of the Netherlands at 713. Article 11 of the agreement contains a stipulation permitting sub-contractors and servants to enforce the agreement's limitation of liability provision. Neither party disputes that De Voogt was a subcontractor of De Vries. De Voogt also accepted the stipulation by invoking it here. Therefore, under Dutch law, the limitation of liability provision confers a benefit on De Voogt and Meridian's claims against De Voogt, the ship-designer, are barred. Article 11, however, does not apply to Feadship America. Feadship America denies having had anything to do with the construction, design or sale of the Meduse, making it impossible for it to have been either a subcontractor or servant of De Vries. Accordingly, Feadship America, although it may ultimately be found to bear no liability for the allegedly

31

defective foodlift, cannot benefit from the agreement's limitation of liability provision.

> 3. *Vulcan Manager (Ship's Manager) and Vulcan Employer (Cooper's Maritime Employer) v. De Vries (Shipbuilder) - Application of the Dutch Choice of Law Provision to Non-Signatories*

We next consider the claims brought by Vulcan manager, the entity who Cooper alleged was the manager of the Meduse and its crew, and Vulcan employer, Cooper's maritime employer, against De Vries, the Dutch shipbuilder. The general rule is that non-signatories are not bound to the terms of a contract. Because the Vulcan appellants never signed the agreement, the Dutch choice of law provision does not apply to their claims. Furthermore, there is no evidence that the Vulcan appellants fall within any exception to this general rule that would bind them to the contractual provision.

A choice of law clause, like an arbitration clause, is a contractual right that cannot ordinarily be invoked by or against a party who did not sign the contract in which the provision appears. Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F.3d 1151, 1165 (9th Cir. 1996). Despite this general rule, this Circuit has recognized in similar cases concerning arbitration agreements that "'common law principles of contract and agency law'" permit a signatory to bind a non-signatory under a limited set of circumstances, these include: "'(1) incorporation by

reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel.'" World Rentals and Sales, LLC v. Volvo Constr. Equip. Rents, Inc., 517 F.3d 1240, 1244 (11th Cir. 2008) (quoting Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001)). Neither party alleges or provides any evidence demonstrating that any of these theories permit De Vries to bind the Vulcan appellants to the Dutch choice of law provision.

This Circuit has also recognized a somewhat different theory in Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285 (11th Cir. 1998). There, the court held that "[i]n order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." Id. at 1299 (quoting Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993)) (quotations omitted). Specifically, the Lipcon court found that the non-signing parties were bound by the choice of law and choice of forum clauses where the parties' rights were "completely derivative of those of the [signing parties]-and thus 'directly related to, if not predicated upon' the interests of the [signing parties].'" Id. (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1297 (3d Cir. 1996)).

Here, the Vulcan appellants' third-party claims arise out of an independent right of indemnity and contribution and do not derive from the agreement. Thus, even in the absence of the agreement, Vulcan manager and Vulcan employer would still have a viable third-party action against De Vries based on their underlying liability to Cooper. Moreover, De Vries presents no other reason why the Vulcan appellants should be bound by the agreement. In contrast to Lipcon, in this case, there is no evidence that such a close relationship existed between Meridian, who signed the agreement, and the Vulcan appellants, who were non-signatories. Even assuming that Meridian and the Vulcan appellants have the same president and beneficial owner, that alone is not sufficient to demonstrate that the Vulcan appellants are Meridian's alter egos, permitting us to disregard their individual corporate identities. The Vulcan appellants therefore are not bound by the agreement's Dutch choice of law provision.

## B. Non-Contractual Choice of Law Analysis - Remaining Third-Party Claims

*1. The Meduse (Ship), Vulcan Employer (Cooper's Maritime Employer) & Vulcan Manager (Ship's Manager) v. the Dutch Shipbuilding Appellees (Shipbuilder and Ship-Designer) - Negligence Theory*

We turn now to the issue of what law governs the third-party claims brought by the Meduse, the ship, and the Vulcan appellants, the ship's manager and Cooper's employer, against De Vries and De Voogt, the Dutch shipbuilder and

34

designer. The U.S. and the Netherlands are the only two countries with a potential interest in the determination of this action. The British Virgin Islands, where Vulcan employer is incorporated, and the Cayman Islands, where the Meduse is registered, are also potentially interested jurisdictions, but the parties have provided no information on this score, and we see no reason to burden ourselves with further research. As already discussed, Dutch law provides a five-year statute of limitations for actions brought under the general tort provisions of the Dutch Civil Code and this action was filed less than two years after Cooper's injury. Under U.S. law, "any limitations period in a cause of action for indemnity or contribution does not begin to run until judgment against defendant has been entered or payment of the primary liability payment has been made . . . ." ITT Rayonier, Inc. v. Southeastern Mar. Co., 620 F.2d 512, 515 (5th Cir. 1980). The third-party complaint was filed prior to settlement with Cooper, making this action timely under federal maritime law regardless of which limitations period applies. Therefore, on this issue, there is no conflict and thus there is no need to decide whether U.S. or Dutch law controls. Accordingly, the third-party claims brought by Meduse and the Vulcan appellants may proceed against the Dutch shipbuilding appellees on a general tort or negligence theory.

   2. *The Meduse (Ship), Vulcan Employer (Cooper's Maritime Employer)*

*& Vulcan Manager (Ship's Manager) v. the Dutch Shipbuilding Appellees (Shipbuilder and Ship-Designer) - Strict Products Liability Theory*

As stated earlier, the non-signatory appellants also raise claims based on strict liability. We must determine which jurisdiction's law applies to those strict liability claims in order to decide whether they are time-barred. After conducting a conflict of laws analysis, we find the Netherlands to be the only interested jurisdiction. Accordingly, Dutch law applies and the third-party strict liability claims of the non-signatory appellants are barred by the ten-year statute of repose.

In any conflict of laws analysis, the first issue that needs to be addressed is whether a conflict actually exists. In other words, are we dealing here with a false conflict? "Simply stated, [a false conflict occurs] . . . when the laws of the competing states are substantially similar . . . ." Fioretti v. Massachusetts Gen. Life Ins. Co., 53 F.3d 1228, 1234 (11th Cir. 1995). If a false conflict exists, "the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states." Id.; see also Dresdner Bank AG v. M/V Olympia Voyager, 446 F.3d 1377, 1381 (11th Cir. 2006).

Here, however, at least at first glance, a true conflict exists between federal maritime law and Dutch law with regard to the timeliness of the third-party products liability claims brought by the Meduse and the Vulcan appellants against

36

the Dutch shipbuilding appellees.  "[A] true conflict exists when two or more states have a legitimate interest in a particular set of facts in the litigation and the laws of those states differ or would produce a different result."  Estate of Miller ex rel. Miller v. Thrifty Rent-A-Car System, Inc., 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009).  There appears to be a clear difference between Dutch law and federal maritime law.  As already indicated, under federal maritime law, all of the third-party claims are timely.  Under Dutch law, on the other hand, the third-party claims under a strict products liability theory are barred by the ten-year statute of repose.

The Netherlands has an interest in making sure that the Dutch shipbuilding appellees, companies incorporated and producing products within its borders, are not subjected to claims for an open-ended length of time.  On the other hand, assuming, for purposes of argument, that the U.S. has an interest, its policy is to ensure that companies conducting business in the U.S. can seek indemnity or contribution from joint tortfeasors.  The reason for this strong policy is partly related to the pro-plaintiff nature of federal maritime law, which imposes strict liability on shipowners, even where others are primarily at fault.  See Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 208 (1996) ("The duty imposed was absolute; failure to supply a safe ship resulted in liability 'irrespective of fault

37

and irrespective of the intervening negligence of crew members.'" (quoting Miles

v. Apex Marine Corp., 498 U.S. 19, 25 (1990))).  From a policy perspective, a true

conflict exists between Dutch and federal maritime law and we must therefore

determine which law applies.

At the outset, the parties dispute which choice of law analysis applies.

Appellees argue that the district court was correct in applying the eight-factor test

set forth in Lauritzen v. Larsen, 345 U.S. 571 (1953), and expanded upon in

Romero v. Int'l Terminal Operating Co., 358 U.S. 354 (1959), and Hellenic Lines

Ltd. v. Rhoditis, 398 U.S. 306 (1970).[10]  By contrast, the four appellants[11] argue

that in deciding which law to apply to their indemnity/contribution action, the

district court should have applied the same law that governed Cooper's underlying

personal injury claims against them, as set out in Marathon Pipe Line Co. v.

Drilling Rig Rowan/Odessa, 761 F.2d 229, 235 (5th Cir. 1985), which held that

"the body of law establishing the indemnitee's primary liability governs his claim

for indemnity or contribution against a third party."

---

[10] Lauritzen involved an action brought by a foreign sailor against a foreign shipowner to recover tort damages under the Jones Act.

[11] Although we refer to the "four appellants," we have already disposed of Meridian's claims against the Dutch shipbuilding appellees on the basis of Article 10 of the agreement.

Here, applying <u>Lauritzen</u> is proper as it permits us to take into account the distinct interests involved at the contribution stage. The district court noted in its decision that <u>Marathon Pipe</u> is not controlling precedent in this Circuit[12] and that the <u>Lauritzen</u> factors "more accurately weighs and balances the interests at play in a given case . . . [and] allows for the law of the country with the greatest interest in the dispute to govern."[13] <u>Cooper</u>, slip. op. at 9 n.3. We agree and similarly refuse to adopt a choice of law analysis that ignores this suit's international aspects. <u>See</u>

---

[12] The First and Fourth Circuits similarly hold that the substantive law that governs the underlying action applies to an action for indemnity or contribution. <u>See</u> <u>Vaughn v. Farrell Lines, Inc.</u>, 937 F.2d 953, 956 (4th Cir. 1991) ("We have determined that the underlying tort claims from which the indemnity claim is derived in this action are maritime tort claims to be adjudicated under federal admiralty jurisdiction. Therefore, '[a] noncontractual indemnity claim arising therefrom is similarly a maritime claim.' (quoting <u>White v. Johns-Manville Corp.</u>, 662 F.2d 243, 247 (4th Cir. 1981))); <u>Gen. Contracting & Trading Co., LLC v. Interpole, Inc.</u>, 899 F.2d 109, 113 (1st Cir. 1990) ("Because GCT's primary complaint against Interpole must be determined under New Hampshire law, we believe that Interpole's attempt to get noncontractual indemnity with respect thereto must also be determined under New Hampshire law . . . .").

[13] The four appellants claim that the underlying action brought by Cooper was governed by federal maritime law. Such a finding was never made by the district court because Cooper's claim settled before any such determination needed to be made. <u>Cooper</u>, slip. op. at 9 n.3 ("[E]ven though Cooper stated a cause of action under the Jones Act and general maritime law, the Court was never asked to determine in the underlying case which law would be most appropriate."). If forced to confront the issue, the district court may very well have found that Cooper's underlying action was governed by federal maritime law, especially considering that Cooper is a U.S. domiciliary who is alleged to have contracted in the U.S. for his maritime employment. It may seem anomalous that federal maritime law may have governed Cooper's personal injury action while Dutch law governs certain third-party claims that are based on that action, but such an outcome is explicitly recognized by the conflict of laws doctrine of <u>depecage</u>. <u>See</u> <u>Foster v. United States</u>, 768 F.2d 1278, 1281 (11th Cir. 1985) ("Pursuant to the conflicts doctrine of 'depecage,' different substantive issues in a single case may have to be resolved under the laws of different states where the choices influencing decisions differ.").

Lauritzen, 345 U.S. at 578 (recognizing the duty that "one sovereign power is bound to respect the subjects and rights of all other sovereign powers outside its own territory"). Specifically, Marathon Pipe requires that a court automatically apply the same body of law to a contribution action as that which applied to the underlying action. This is the case, despite the fact that the underlying action likely involved different parties, interests and policies than those present in the subsequent contribution action. If we were to find in favor of applying Marathon Pipe, we would be ignoring these important differences.

No court has ever applied Marathon Pipe to a case such as this one, which has international aspects. The choice of law rule acknowledged in Marathon Pipe and the Lauritzen choice of law analysis are separate rules that are to be utilized under different circumstances. Indeed, the only time courts sitting in admiralty have applied Marathon Pipe is where the issue is which subset of American law applies – state law or federal admiralty law. See, e.g., Columbus-McKinnon Corp. v. Ocean Prods. Research, Inc., 792 F. Supp. 786, 787 (M.D. Fla. 1992) (finding, in a third-party action where the underlying maritime injury occurred in the navigable waters of Florida, that "the substantive law of the indemnity and contribution claims by Plaintiff will be subject to the principles of general maritime law" (citing Marathon Pipe Line, 761 F.2d at 235)). The present action,

40

by contrast, concerns a conflict between federal maritime law and the law of a foreign nation. If this were a wholly domestic matter, with no potential foreign interests, Marathon Pipe might very well apply. Concerns for comity, however, make the Lauritzen analysis better equipped at handling choice of law issues where the law of another nation is involved. See Sigalas v. Lido Mar., Inc., 776 F.2d 1512, 1517 (11th Cir. 1985) ("Lauritzen sought to reconcile the expansive reach of the Jones Act with the principles of comity that underlie international law so as to 'foster amicable and workable commercial relations.'" (quoting Rhoditis, 398 U.S. 306, 318 (1970) (Harlan, J., dissenting))); see also Calhoun v. Yamaha Motor Corp., U.S.A., 216 F.3d 338, 346 (3d Cir. 2000) ("[T]he Lauritzen factors are most often applied to determine whether the admiralty law of the United States or that of a foreign state should be applied to a particular dispute."). Unlike Marathon Pipe, Lauritzen will always take into consideration both the U.S. and the foreign interests in a given action.

Indeed, district courts in the Fifth Circuit, where Marathon Pipe is binding precedent, utilize Lauritzen to resolve choice of law issues arising in contribution actions that have an international element and fail to even mention the possibility of applying Marathon Pipe. See, e.g., Galapagos Corporacion Turistica "Galatours", S.A. v. The Panama Canal Comm'n, 190 F. Supp. 2d 900, 905-06

41

(E.D. La. 2002) (applying Lauritzen to a third-party plaintiff's claims for indemnity and contribution where a choice of law question arose as to whether federal maritime law or Panamanian law applied). In fact, the only case to ever specifically suggest that there is a conflict between the two tests, chose to apply the Lauritzen analysis. In re Complaint of Kreta Shipping, S.A., 1 F. Supp. 2d 282, 284 (S.D.N.Y. 1998) (rejecting the magistrate judge's report and recommendation, which explicitly refused to apply Lauritzen to a non-contractual indemnity claim).

Still, the differences between Lauritzen and Marathon Pipe are not as great when viewed from a policy perspective, and neither prevents a third-party plaintiff who has paid more than his fair share from recovering against a third-party defendant. But applying the automatic rule recognized in Marathon Pipe leads to a lack of respect for the interests of foreign jurisdictions. Therefore, a more sophisticated analysis is required, which the Lauritzen line of cases provide.

In employing this approach, we conclude that Dutch law governs these third-party claims because the U.S. has almost no interest in having its law applied to this action. The Lauritzen and Rhoditis decisions established a non-exhaustive list of eight factors to consider when confronted with making a choice between applying federal maritime law and the law of a foreign country. That test requires

consideration of: (1) the place of the wrongful act; (2) the flag under which the ship sails; (3) the allegiance or domicile of the injured party; (4) the allegiance or domicile of the shipowner defendants; (5) the place of the contract between the injured party and the shipowner; (6) the accessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations. Lauritzen, 345 U.S. at 583-91; Rhoditis, 398 U.S. at 309. The Supreme Court emphasized in Rhoditis that these factors are neither exhaustive nor are they meant to be mechanically applied. Rhoditis, 398 U.S. at 308-09. Additionally, "[t]he significance of one or more factors must be considered in light of the national interest served by the assertion of" federal maritime jurisdiction. Id. at 309. Although the claims in Lauritzen were brought under the Jones Act, the Supreme Court has held that "[t]he broad principles of choice of law and the applicable criteria of selection set forth in Lauritzen were intended to guide courts in the application of maritime law generally." Romero, 358 U.S. at 382. "The controlling considerations are the interacting interests of the United States and of foreign countries, and in assessing them we must move with the circumspection appropriate when this Court is adjudicating issues inevitably entangled in the conduct of our international relations." Id. at 383.

The four appellants argue that, even if the district court was correct in engaging in the <u>Lauritzen</u> choice of law analysis, it erred in its application. Specifically, they claim that the district court treated the analysis as a balancing test between U.S. and foreign interests, when <u>Lauritzen</u> is meant to focus on whether sufficient U.S. contacts exist to render application of federal maritime law appropriate. We do not read <u>Lauritzen</u> so narrowly and, indeed, to do so would contradict the teaching of the quoted language of <u>Romero</u>.

The issue at stake here is whether the federal maritime policy of contribution should prevail over the Dutch policy of repose for strict liability claims. If Vulcan employer and the Meduse were from a jurisdiction that would find the strict liability claims against the Dutch shipbuilding appellees to be timely, we would be facing a true conflict with Dutch law. Here, however, the maritime employer is a British Virgin Islands corporation and the ship itself is registered in the Cayman Islands. No information has been provided concerning whether the outcome of this issue under either British Virgin Islands or Cayman Islands law would differ from the outcome under Dutch law. Thus, as discussed more fully below, the <u>Lauritzen</u> analysis reveals that only the Netherlands appears to have an interest in the remaining third-party strict liability claims, while the U.S. has no or, at most, a tangential interest. The wrongful conduct occurred in

the Netherlands where the ship was designed and built, and, thus, the Netherlands has an interest in protecting the Dutch shipbuilding appellees from a belated third-party claim for strict liability. It would appear, on the record presented, that the Netherlands is the jurisdiction with the only interest in this dispute and, therefore, the appropriate law to apply is Dutch law.

Because this is not an action directly by a seaman, as was the case in Lauritzen and Rhoditis, but rather for indemnity, contribution and equitable subrogation, under the facts of this case, the only factors that are relevant to this claim are: (1) the place of the wrongful act; (2) the allegiances or domiciles of the parties; (3) the Dutch shipbuilding appellees' base of operations; and (4) the four appellants' base of operations.[14]

_____

[14] Here, we briefly discuss several of the Lauritzen factors that are not relevant under the facts of this case because they fail to point to the application of either Dutch or federal maritime law. Alternatively, as already discussed, while a third country's law may be relevant to the issue at hand, the parties have failed to provide us with the necessary information concerning such law. The place where Cooper contracted for his employment with his employer, while possibly relevant in analyzing the substantive law that would apply in Cooper's underlying personal injury action, has no relevance to the policy of permitting an action for contribution or indemnity and will thus not be considered. Also, no direct contractual relationship exists between the Vulcan appellants and the Dutch shipbuilding appellees. The accessibility of the foreign forum factor is also irrelevant, as it is more pertinent to a forum non conveniens test than to a choice of law analysis. Lauritzen, 345 U.S. at 589-90 (finding that the inaccessibility of the foreign forum factor "might be a persuasive argument for exercising a discretionary jurisdiction to adjudge a controversy; but it is not persuasive as to the law by which it shall be judged"). Additionally, there is nothing to indicate that the Netherlands is not an available and adequate forum for the adjudication of the remaining third-party claims. Finally, "[t]he law of the forum, is entitled to little weight because fortuitous circumstances . . . often determine the forum." Membreno v. Costa Crociere S.P.A., 425 F.3d 932, 936 (11th Cir. 2005) (quoting Sigalas v. Lido Mar., Inc.,

45

The wrongful act, namely the manufacture and installation of the foodlift, took place in the Netherlands and therefore strongly favors the application of Dutch law because the Netherlands has an interest in regulating all such activity occurring within its borders. The four appellants argue that the wrongful act occurred on the high seas, where the defect in the foodlift manifested itself, thus, not pointing either to the application of federal maritime law or Dutch law. Here, we agree with the district court that the wrongful act occurs where the construction of the defective product took place and not in the place where the injury occurred – a remote area in the sea where the ship happened to have been at the time the effects of the defect came to fruition. See Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd., 426 F.3d 580, 587 (2d Cir. 2005) (finding that "the place of the wrongful act is not where the vessel sinks, but where the negligence occurs."). This factor should no doubt be given more weight here where the wrongful act occurred in a fixed location; in contrast, the place of the injury, namely Cooper's injury, occurred in a purely fortuitous location on the high seas. See EEOC v. Bermuda Star Line, Inc., 744 F. Supp. 1109, 1111 (M.D. Fla. 1990) (finding that in Title VII maritime cases, the place of the wrong factor merits considerable weight because unlike "in Jones Act cases [, where] the place

776 F.2d 1512, 1517 (11th Cir. 1985)) (internal quotation marks omitted).

46

of the wrong should generally be given little weight, as the place a seaman is injured will generally be a fortuitous matter, here it is not so").

Turning to the domicile factor, among the four appellants, Meridian and Vulcan employer are British Virgin Islands corporations and the Meduse is registered in the Cayman Islands. If British Virgin Islands or Cayman Islands law is similar to federal maritime law concerning its policy of indemnity and contribution then a true conflict with Dutch law would exist. However, again because the parties have not provided any information concerning the law of these countries, no conflict is evident, and this factor thus has no effect on our analysis. Vulcan manager, the entity that is alleged by Cooper to have managed the Meduse at the time of his accident, is a Washington corporation. However, this not a strong factor in favor of applying federal maritime law because no specific information has been provided about either Vulcan manager's role in managing the ship or its U.S. activities. With regard to appellees, De Vries and De Voogt are foreign corporations with principal places of business in the Netherlands, which strongly favors the application of Dutch law. Although Feadship America is a Florida corporation with a principal place of business in Florida, as discussed already, the company does not seem to have played any role in the manufacture of the Meduse or the allegedly defective foodlift. Here, the fact that one of the four

appellants and one of the three appellees involved are domiciled in the United States is not sufficient to justify the blanket application of federal maritime law.

The choice of law analysis also requires us to look beyond corporate formalities and examine the parties' operational contacts with the U.S. See Williams v. Cruise Ships Catering and Serv. Int'l, N.V., 299 F. Supp. 2d 1273, 1279 (S.D. Fla. 2003). This Circuit has stated in dicta that "[i]f the defendants have a substantial base of operations in the United States, this factor alone can justify the application of United States law." Membreno v. Costa Crociere S.P.A., 425 F.3d 932, 936 (11th Cir. 2005) (emphasis added). At the same time, an earlier decision stated: "Rhoditis . . . does not command us to hold, that the shipowner's base of operations is the sole controlling factor in a choice-of-law decision." Chiazor v. Transworld Drilling Co., Ltd., 648 F.2d 1015, 1018 (5th Cir. 1981), overruled on other grounds by In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982, 821 F.2d 1147, 1169 (5th Cir. 1987). In deciding whether a party has a base of operations in the U.S., "the important question is whether the contacts, irrespective of [the party's] contacts in other countries, amount to a substantial relation to the United States." Williams, 299 F. Supp. 2d at 1283 (emphasis in original).

Furthermore, a complete choice of law analysis requires that we examine the base of operations of all parties. In Rhoditis, the Supreme Court added the consideration of the shipowner's base of operations as an eighth factor to the Lauritzen choice of law analysis. Rhoditis, 398 U.S. at 309. Rhoditis, however, involved a very different factual scenario from that presented here. In contrast to this action, Rhoditis concerned a direct suit by a seaman only against the shipowner. Because no other parties were involved in that suit, in Rhoditis the Court only took into consideration the shipowner's base of operations. Rhoditis made clear, however, that the Lauritzen factors were not meant to be exhaustive. Id. We find it reasonable, under the facts of this case, where the shipowner is the third-party plaintiff, to consider the operating base of the third-party defendant shipbuilder and designer, who are analogous to the defendant shipowner in Rhoditis. For similar reasons, we examine the U.S. contacts of all four appellants, and not just the appellant shipowner, to determine whether they have bases of operations in this country. The four appellants argue that the district court erred by failing to consider the base of operations factor. Although this may be true, such error was harmless as the evidence presented before the district court was insufficient to determine that any of the four appellants or appellees actually have a U.S. base of operations.

The Dutch shipbuilding appellees do not have a U.S. base of operations. The four appellants cite to Feadship's website, which acknowledges that De Vries and De Voogt are part of the Feadship venture. However, no information is provided regarding either the extent or the types of activities that the two Dutch shipbuilding appellees perform in the U.S. that could lead to a determination that De Vries and De Voogt conduct substantial day-to-day operations in Florida. Furthermore, the website excerpts acknowledge that "Feadship's head office is located in Haarlem" in the Netherlands, "and shares its offices with De Voogt Naval Architects."[15] Although De Vries owns fifty percent of the stock in Feadship America, there is nothing to indicate that De Vries exercises day-to-day control over the American company or that corporate formalities are not properly maintained.

The website also states that Feadship America's Florida office serves "as a base of operations for Feadship people during their frequent trips over from The Netherlands." This, however, merely implies that De Vries and De Voogt, entities that are part of the Feadship venture, use Feadship America's offices in Florida if

_____

[15] This information is contained under the heading "Feadship Holland," while the information concerning Feadship's Florida office is located under the heading "Feadship America." This suggests that Feadship is comprised of two entities, with the principal entity, "Feadship Holland," based out of the Netherlands.

and when they visit the U.S. The mere fact that the Dutch shipbuilding appellees are part of a venture that also operates in the U.S. is not sufficient to demonstrate that they have a U.S. base of operations. Cf. Membreno, 425 F.3d at 936 (finding that the fact that the defendant is a fully owned subsidiary of Carnival, which maintains its principal place of business in Florida, is insufficient, by itself, to establish that the defendant has a substantial base of operations in the U.S. where the evidence presented showed that Carnival did not control the defendant's day-to-day operations). This remains true even if half of Feadship's clients are located in the United States, especially where no information is provided concerning how much revenue the Dutch shipbuilding appellees generate from their American clientele. Sigalas, 776 F.2d at 1518 (finding that the fact that the bulk of the defendant shipowner's revenue came from American clients is not enough, by itself, to justify application of American law).

Similarly, the four appellants fail to present sufficient evidence establishing that they have a U.S. base of operations. The Meduse has docked in Florida and other U.S. ports, but no information is provided concerning the frequency of the ship's presence in the U.S. The four appellants also assert, in their brief, that Meridian and Vulcan employer have principal places of business in Florida and

51

that Vulcan manager has a principal place of business in the state of Washington.[16]

However, in their answer to Cooper's amended complaint the four appellants denied that either Meridian or Vulcan employer have a principal place of business in Florida. "[T]he general rule [is] that a party is bound by the admissions in his pleadings." Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983). "Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." Hill v. Federal Trade Comm'n, 124 F.2d 104, 106 (5th Cir. 1941). We, therefore, deem the four appellants' unexplained denials to be admissions that Meridian and Vulcan employer do not have a principal place of business in Florida. These judicial admissions are binding, and the four appellants cannot now claim the exact opposite to be true when they might work to establish their U.S. contacts.[17] Even without such admissions,

---

[16] In his complaint, Cooper alleged that Vulcan manager "is a Washington corporation with its principal place of business relating to the management of the *Meduse* and its crew located at its yacht manager's offices" in Florida. In their answer, the four appellants denied that Vulcan manager has a principal place of business in Florida.

[17] An exception to this general rule has been recognized by this Circuit "to permit the exercise of the liberal pleading and joinder provisions of the Federal Rules of Civil Procedure lest inconsistent pleadings under Rule 8(e)(2) be used as admissions negating each other and lest the allegations in third party complaints and cross-claims seeking recovery over in the event of liability in the principal action be used as admissions establishing liability." Nichols v. Barwick, 792 F.2d 1520, 1523 (11th Cir.1986). However, neither of these scenarios are present here as there are no inconsistent pleadings or joinder issues. "Normally judicial admissions are binding for the purpose of the case in which the admissions are made, not in separate and subsequent

however, there is no evidence in the record that Meridian or Vulcan employer actually have their principal places of business in Florida or that Vulcan manager has its principal place of business in the state of Washington.

The four appellants also allege that they are beneficially owned by a U.S. citizen and that Meridian and the Vulcan appellants have a U.S. citizen as their president. Even assuming that the four appellants were beneficially owned by a U.S. citizen, this, by itself, is not sufficient to establish a U.S. base of operations where that person has used the advantages offered by a foreign jurisdiction's law by incorporating in that jurisdiction. In Rhoditis, the Court found a U.S. base of operations where: (1) the foreign shipowner was principally owned by a U.S. domiciliary who managed the corporation in the U.S.; (2) the foreign shipowner had a U.S. principal place of business; (2) the ship was regularly engaged in scheduled runs between ports in the U.S. and ports in the Middle East, Pakistan and India; and (4) the ship's entire income derived from cargo either originating or terminating in U.S. ports. Rhoditis, 398 U.S. at 307-08. Unlike in Rhoditis, here the four appellants provide no information demonstrating that the U.S. is where

cases." In re Raiford, 695 F.2d 521, 523 (11th Cir. 1983). Although the admissions were made in an answer to Cooper's complaint, the present third-party action is part of Cooper's original lawsuit. The four appellants' judicial admissions in their answer to Cooper's complaint are thus binding for the purposes of this third-party action.

their operations occur, management decisions are made or revenues are generated. The bare allegations of American ownership and domicile of their president fail to demonstrate a U.S. base of operations.

Other than Cooper's allegation in his complaint that Meridian and the Vulcan appellants were beneficially owned by a U.S. citizen who was "personally and actively involved in hiring . . . Cooper . . . and [who] regularly gave orders to Cooper regarding the Vessel's movements, itinerary and operational budget,'" an allegation denied by appellants, there is no indication that the owner was actively involved in the operations of either the ship or the appellant corporations. Rather, the only claim is that the owner was a U.S. citizen. Although in some cases, having a U.S. corporate president may strongly indicate that the bulk of management decisions are made in the U.S., the four appellants never make this allegation, let alone bring forth evidence suggesting the same.

In order to determine if the U.S. has a substantial interest, the Supreme Court has made clear that we must do more than engage in a contact counting exercise, as both parties have at times engaged in. Hellenic Lines Ltd. v. Rhoditis, 412 F.2d 919, 922 (5th Cir. 1969) ("Lauritzen did not create a contact counting test."), aff'd, 398 U.S. 306 (1970). Rather, in determining whether the U.S. has an interest in applying its law, we must review the substance of those contacts by

54

analyzing both the policies underlying the issues on which the dispute centers and the factual contexts under which the dispute arose. Here, the only facts even remotely suggesting a U.S. interest are that: (1) Vulcan manager, the company that Cooper alleged to have been involved in managing the ship and its crew, is incorporated in the U.S.; (2) Feadship America, an affiliate of the builder and designer of the ship, is a U.S. corporation; (3) the Meduse, the ship on which the injury occurred, sometimes navigates in U.S. waters and docks in U.S. ports; (4) the four appellants have a U.S. beneficial owner; and (5) Meridian and the Vulcan appellants have a U.S. president. As demonstrated above, such connections, under the facts of this case, can hardly be considered so significant as to demonstrate a meaningful U.S. interest. In sum, the four appellants have not shown that the U.S. has a substantial interest in this third-party action; therefore, this issue involves a false conflict, with Dutch law controlling.

The Netherlands clearly has a strong interest in having its law applied. The domicile of the companies that constructed and designed the Meduse are in the Netherlands, as was the place of construction, thus demonstrating that it has not only a substantial, but a predominate, if not sole, interest in applying Dutch law

and its policy of repose.[18]  Accordingly, Dutch law applies to the strict liability claims brought by the Meduse and the Vulcan appellants against the Dutch shipbuilding appellees, effectively barring that action as untimely.

### 3. *The Four Appellants v. Feadship America*

On the other hand, federal maritime law applies to all of the third-party claims brought by the four appellants against Feadship America, making those actions timely.  It is undisputed that Feadship America is incorporated in the U.S. with a principal place of business in Florida.  Furthermore, the four appellants include a U.S. company, two British Virgin Islands entities and a ship registered in the Cayman Islands.  Although the Cayman Islands and the British Virgin Islands appear to have an interest and may even provide a different answer than federal maritime law concerning the timeliness of this third-party action, no party requests that the court apply such law or suggests that a conflict exists.  Thus, the only law that has any relevance to an action between the four appellants and Feadship America is federal maritime law, making such law applicable.  It is undisputed that this action is timely under federal maritime law.  The four appellants are,

---

[18] As already noted, although the Cayman Islands and the British Virgin Islands may have an interest in this litigation such that it would be reasonable to apply their law, neither side argues for the application of such law or informs the court as to the substance of such law, which may have dictated a more favorable outcome for the four appellants.

therefore, free to proceed with their claims against Feadship America, although, as noted above, because Feadship America does not appear to have played any role in the sale, construction or design of the allegedly defective foodlift the success of their action is doubtful.

## CONCLUSION

The decision of the district court dismissing Meridian's claims against De Vries and De Voogt is affirmed. The district court's decision dismissing the third-party claims of the Meduse, Vulcan manager and Vulcan employer against the Dutch shipbuilding appellees, De Vries and De Voogt, is affirmed in part and reversed in part; the action may proceed, but only under Dutch law on a negligence or general tort theory.[19] The district court's decision dismissing the four appellants' claims against Feadship America is reversed and those third-party claims may proceed under federal maritime law on either a strict liability or negligence basis.

**AFFIRMED IN PART**; **REVERSED IN PART; AND REMANDED.**

---

[19] We are not certain that this would require a different showing than negligence under federal maritime law, but leave it up to the parties to explore on remand.