[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15750
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-23628-KMM

LEADER GLOBAL SOLUTIONS LLC,

Plaintiff - Appellee,

versus

SAMUEL YANKELEWITZ,
individually,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 14, 2019)

Before JILL PRYOR, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Samuel Yankelewitz appeals the decision of the district court on summary

judgment that an order of a Costa Rican bankruptcy court did not terminate his

liability to Leader Global Solutions LLC ("LGS") under the terms of a Florida guaranty. Because we agree that the guaranty remains in force, we affirm.

## I. BACKGROUND

This appeal follows cross-motions for summary judgment in the district court. The undisputed facts are as follows. Yankelewitz, also known as Samuel Yankelewitz Berger, is a citizen of Costa Rica and was the owner and sole shareholder of Corporación Yanber S.A. ("Yanber"), a plastics manufacturing firm there. In 2015, Yanber signed a sales agreement with LGS, a Florida company. Under that agreement, LGS would purchase materials from suppliers and deliver them to Yanber's factories. Shortly thereafter, Yankelewitz signed a guaranty under Florida law assuming personal liability for Yanber's debts to LGS. Under the terms of that contract, Yankelewitz agreed "to guarantee any and all obligations of [Yanber] to [LGS]." "The obligations of [Yankelewitz] under this Guaranty shall be primary obligations, and the liability of [Yankelewitz] under this Guaranty shall be absolute and unconditional irrespective of" several eventualities including:

> any present or future action of any governmental authority amending, varying, reducing or otherwise affecting, or purporting to amend, vary, reduce or otherwise affect, any of the Guaranteed Obligations or this Guaranty;
> . . .
> any release or discharge by operation of law of [Yanber], [Yankelewitz], or any other guarantor of the Guaranteed Obligations from any obligation or agreement contained in the Sales Agreement or the Local Agreement[.]

2

Moreover, the guaranty states:

> [Yankelewitz] further acknowledges and agrees that the Guaranteed Obligations will survive any bankruptcy, merger or dissolution of any of [Yanber], including, without limitation: (i) the commencement of any proceeding for voluntary bankruptcy by [Yanber]; (ii) any assignment for the benefit of creditors by [Yanber]; (iii) the entry of a decree or order for relief by a court having jurisdiction in the premises in respect of [Yanber] in an involuntary case under any applicable law; or (iv) the dissolution or winding down of any of [Yanber].

Under the sales agreement, Yanber made several purchases from LGS, which issued interest-bearing promissory notes for the amounts due, which were more than $3 million.

Later in 2015, Yanber and another company of Yankelewitz's, Fomento Agrícola del Atlántico S.A. ("Fomento"), filed a petition for a *convenio preventivo* in Costa Rican bankruptcy court, seeking an official pre-insolvency proceeding that would attempt to reorganize the companies to secure payment to their creditors. *See generally* Costa Rica Civ. Proc. Code arts. 743–759. Under Costa Rican bankruptcy law, a debtor can propose a *convenio* to his creditors at any time before being declared insolvent, in an effort to negotiate a settlement of debts without such a declaration.

This *convenio* proceeding brought together dozens of Yanber's and Fomento's creditors, including LGS. They negotiated a Precautionary Agreement under which Yankelewitz would transfer all of his shares in his two companies to a creditors' trust; in return, the creditors would deem their claims paid. The

3

bankruptcy court approved the agreement and incorporated it into its final order in January 2016. After listing the creditors, including LGS, whose claims against Yanber and Fomento were approved, the court noted that "[t]he personal collection of claims against Samuel Yankelewitz Berger is rejected since this person is not insolvent in this matter." The creditors' listed claims were "considered paid, condoned, and extinguished." To effect this settlement, "Samuel Yankelewitz, assigns 100% of the shares of [Yanber and Fomento] as assets, acting as the sole shareholder, to the trust approved by the Creditors' Committee, freeing him of all liability, being this assignment his only obligation." The court also noted that Yanber and Fomento were "represented in this matter by Samuel Yankelewitz Berger by recorded legal capacity. Samuel Yankelewitz Berger also appears on his own behalf as a shareholder."

Meanwhile, LGS had filed a breach of guaranty suit in U.S. district court against Yankelewitz personally, seeking to recover over $2 million. When Yankelewitz then paid LGS $780,000, LGS dismissed the lawsuit. After no further payment was forthcoming, LGS again sued Yankelewitz to enforce the guaranty. The parties filed cross-motions for summary judgment, with Yankelewitz arguing that the order of the Costa Rican bankruptcy court had extinguished his liability to LGS. Both parties offered competing expert opinions on the meaning and

4

operation of that order under Costa Rican law.[1]

The district court granted summary judgment for LGS, having rejected Yankelewitz's urging to abstain on the basis of international comity or res judicata. It found that Yankelewitz's proffered defenses were explicitly waived by the terms of the guaranty and that LGS had not waived the guaranty by joining the Precautionary Agreement. The district court awarded LGS $4,293,092.70 including interest, attorney's fees, and costs. Yankelewitz now appeals.

## II.  DISCUSSION

We review *de novo* the grant of summary judgment to LGS, viewing all facts in the light most favorable to Yankelewitz. *Burger King v. E-Z Eating, 41 Corp.*, 572 F.3d 1306, 1312–13 (11th Cir. 2009). Having reviewed the Florida guaranty contract and the Costa Rica Precautionary Agreement and bankruptcy court order, we agree with the district court that there exists no bar to enforcing the clear terms of the guaranty against Yankelewitz.

We begin with the contract LGS seeks to enforce. Yankelewitz does not dispute on appeal that the guaranty he signed with LGS, under Florida law, was valid against him or that he breached it. Neither does he dispute the terms of the guaranty, which on their face appear to foreclose his main argument, that his obligations were set aside by the Costa Rican bankruptcy court or by LGS in its

---

[1] Of course, we are not bound by the parties' experts' opinions about the foreign law. Fed. R. Civ. P. 44.1; *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1163 n.5 (11th Cir. 2009).

participation there. The guaranty explicitly excludes modification by "any governmental authority," any "operation of law," or "any bankruptcy," including "any assignment for the benefit of creditors by [Yanber]." We agree with the district court that the guaranty is broadly enforceable against Yankelewitz.

Nonetheless, Yankelewitz contends on appeal that (1) the Costa Rican bankruptcy court order canceled his personal liability to LGS, (2) LGS waived the guaranty when it participated in the Costa Rican proceedings, and (3) we should defer to the Costa Rican proceedings as res judicata. We address each of these arguments in light of the guaranty in turn.

First, it is undisputed that, under the terms of the Precautionary Agreement and the order of the Costa Rican bankruptcy court, Yanber's *corporate* liabilities to LGS and other creditors are "paid, condoned, and extinguished" in exchange for the entirety of the company's shares. Yankelewitz argues that his *personal* liabilities to LGS are also paid, either under the explicit terms of the bankruptcy order or by operation of Costa Rican law through the order. By contrast, LGS argues that Yankelewitz was never a party to the *convenio preventivo*, the Precautionary Agreement, or the order of the bankruptcy court, so those proceedings could not touch his personal liabilities. For the reasons that follow, we agree with LGS.

6

Indisputably, it was the companies Yanber and Fomento that petitioned for the *convenio* and that are the named parties to the bankruptcy court's order. But Yankelewitz rejects this formalistically limited view of the Costa Rican proceeding. His more nuanced position is that, although the companies were the debtors who convened the *convenio*, the Precautionary Agreement and court order that resulted included Yankelewitz as a party, both as the representative and owner of the companies and on his own behalf. He observes that the order states:

> Samuel Yankelewitz, assigns 100% of the shares of [Yanber and Fomento] as assets, acting as the sole shareholder, to the trust approved by the Creditors' Committee, freeing him of all liability, being this assignment his only obligation.

LGS responds that Yankelewitz's personal participation was necessary only for, and limited strictly to, his ability to sign over his shares in the companies. Thus, it argues, the freedom from liability granted by the Agreement and the order is limited to his liability as a shareholder of the companies, and his personal liability as established independently by the guaranty remains.

We agree with LGS. The results of the Costa Rican proceeding contain no evidence that it encompassed any of Yankelewitz's personal debts. The order itself supports this view when it states:

> The personal collection of claims against Samuel Yankelewitz Berger is rejected since this person is not insolvent in this matter and it is not conducive to include him as part of an alleged economic interest group through the filing of claims. If such declaration is of interest, resort to the corresponding declarative courts.

7

This paragraph specifically excludes the settlement of Yankelewitz's personal liabilities from the terms of the bankruptcy court's order. Yankelewitz responds that this passage meant only that he is protected from personal claims against him in that particular insolvency proceeding. We express no opinion on whether LGS could or should have pursued its personal claims against Yankelewitz in Costa Rica, but the Costa Rican order did not address those claims.

Yankelewitz's remaining arguments on this point also fail. He observes that Costa Rican law provides that precautionary agreements "shall also benefit the guarantors of the bankrupt and those jointly and severally liable." Costa Rica Comm'l Code art. 943. To whatever extent this provision might cancel Yankelewitz's personal liability to LGS by operation of law, such an eventuality is expressly excluded in the terms of the guaranty, which excludes "any release or discharge by operation of law." To whatever extent it might do so as an act of Costa Rican judicial fiat, that too is excluded in the guaranty's exception of "any present or future action of any governmental authority" affecting Yankelewitz's obligations. Last, Yankelewitz argues that the district court's reading of the Costa Rican order is absurd because, under it, he would have given up the entirety of his personal interests in his companies and gotten nothing in return. Although we express no opinion regarding Yankelewitz's affairs generally, we are reluctant to

characterize complete freedom from his companies' corporate liabilities as nothing.

Yankelewitz's second main argument is that LGS executed a waiver of the guaranty when it entered into the Precautionary Agreement. We disagree. The guaranty provides: "No amendment or waiver of any provision of this Guaranty, nor consent to any departure by [Yankelewitz] therefrom, shall be effective or binding upon [LGS] unless [LGS] shall first have given written consent thereto." The Precautionary Agreement was not consent to a waiver; although it was in writing, it never mentioned the guaranty. The writing requirement precludes waiver by implication, and Florida law enforces the termination provisions of guaranty agreements. "The termination of an interest in a corporation, in and of itself, does not also terminate liability under a separate personal guaranty agreement unless the termination provisions of the agreement are complied with." *Sanz v. Prof'l Underwriters Ins. Agency*, 560 So. 2d 1254, 1254 (Fla. 3d Dist. Ct. App. 1990). Because LGS did not expressly give written consent for Yankelewitz to depart from the terms of the guaranty, this argument fails.

Yankelewitz's final argument is that U.S. courts ought to abstain from enforcing the guaranty on the basis of international comity toward the order of the Costa Rican bankruptcy court. We review the denial of international comity for abuse of discretion. *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1303

9

(11th Cir. 2008). We agree with the district court that no abstention doctrine counsels against granting relief to LGS.

We accept that, for purposes of Costa Rican law, a bankruptcy court order adopting a Precautionary Agreement can have res judicata effect. *See* Costa Rica Civ. Proc. Code. art. 799. But our inquiry does not end there. Florida law requires that a party seeking to bar a subsequent claim as res judicata establish four identities between the two actions: "(1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the actions; and (4) identity of the quality or capacity of the persons for or against whom the claim is made." *Seaboard Coast Line R.R. Co. v. Indus. Contracting Co.*, 260 So. 2d 860, 862 (Fla. 4th Dist. Ct. App. 1972). At a minimum, there is no identity in the thing sued for here. This suit is about what Yankelewitz owes to LGS under the guaranty. The Costa Rican court order, by contrast, is about what Yanber owed to LGS under its promissory notes.

We acknowledge that the doctrine of international comity allows us to defer to the judgment of a foreign tribunal in an identical matter out of "practice, convenience, and expediency." *GDG Acquisitions LLC v. Gov't of Belize*, 749 F.3d 1024, 1030 (11th Cir. 2014). But those discretionary concerns counsel no particular attitude toward a foreign court order wholly distinct from this breach of guaranty suit.

10

### III.  CONCLUSION

The Florida guaranty contract that created Yankelewitz's personal liabilities to LGS specifically envisions that those liabilities would not be easily extinguished, and we hold that they were not. The judgment of the district court is

**AFFIRMED.**